IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT KNOXVILLE

OCTOBER SESSION, 1997

FILED

May 26, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | C.C.A. NO. 03C01-9704-CC-00160 |
| | ) | |
| Appellee, | ) | |
| | ) | |
| | ) | SEVIER COUNTY |
| VS. | ) | |
| | ) | HON. BEN W. HOOPER, II |
| KEITH E. HODGE, | ) | JUDGE |
| | ) | |
| Appellant. | ) | (Direct Appeal - Aggravated Rape and |
| | ) | Aggravated Sexual Battery) |

FOR THE APPELLANT:

CHARLES I. POOLE
133 Commerce Street
Sevierville, TN 37862

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General and Reporter

MARVIN E. CLEMENTS, JR.
Assistant Attorney General
425 Fifth Avenue North
Nashville, TN 37243

AL SCHMUTZER, JR.
District Attorney General

STEVEN R. HAWKINS
Sevier County Courthouse
Sevierville, TN 37862

OPINION FILED _____

REVERSED AND REMANDED

JERRY L. SMITH, JUDGE

# OPINION

On August 20, 1996 a Sevier County jury convicted Appellant, Keith Hodge, of nine counts of aggravated rape and two counts of aggravated sexual battery. After a sentencing hearing, the trial court sentenced Appellant to twenty years imprisonment for each aggravated rape conviction and ten years imprisonment for each aggravated sexual battery conviction. Three of the twenty year sentences were to be served consecutively, all other sentences were to be served concurrently, for an aggregate sentence of sixty years to be served as a Range I standard offender. After the trial court denied Appellant's motion for a new trial, Appellant filed this appeal, challenging the judgment of the trial court. In this appeal, Appellant presents several issues for review, specifically:

> 1) whether the trial court erred in failing to advise the jury that the State had made an election of which allegation of sexual abuse it would rely upon in its proof for each of the several charges set out in the indictment;
> 2) whether the trial court committed reversible error by failing to advise the jury that they must reach a unanimous verdict as to one particular incident for each of the counts set forth in the indictment;
> 3) whether the trial court erred in permitting the introduction of evidence of uncharged illegal sexual contact prior to the time period alleged in the indictment between Appellant and the victim in this case, Tina Helton Mullinex;
> 4) whether the State's closing argument which contained the "missing witness argument," references to uncharged criminal conduct, and the prosecutor's personal beliefs and opinions constituted reversible error;
> 5) whether the trial court erred in permitting the introduction of the victim's prior consistent statements; and,
> 6) whether the trial court erred at the sentencing hearing in permitting the testimony of three women who testified Appellant had abused each of them.

After a careful review of the record, we must reverse the judgment of the trial court and remand this case for a new trial.

**FACTS**

Appellant and the victim, Tina Helton Mullinex, had a lengthy history before the prosecution of this case. Appellant was married to Ms. Mullinex's aunt, and had three children with her: Linda, Michael, and Teresa. Teresa and Tina were very close friends, a relationship that was shaped in part by the fact Teresa was disabled. Teresa was born with a condition which caused her bones to be very brittle and to break easily. Because of this condition, she was confined to a wheelchair and needed constant care. Ms. Mullinex spent every summer from the time she was five years old until she was twelve with Appellant's family, visiting her cousin Teresa.

According to the State's theory, Appellant began abusing Ms. Mullinex when she was five or six years old, touching her breasts and kissing her. Ms. Mullinex related that in 1982 or 1983 when she was 5 or 6, Appellant forced her to watch a pornographic movie entitled "Dr. Storm" with him, during which he forced her to touch him and he touched her. Ms. Mullinex testified that Appellant abused her almost every day when she was in his home. She recalled specific instances (though she was unable to provide dates) when he abused her during the summers of 1984, 1986, 1988, 1989 and during the Thanksgiving holiday of 1987.

One night in the summer of 1984, Ms. Mullinex was sleeping on a pallet on the floor of Teresa's room, when Appellant came into the room and laid down on the pallet behind her. Appellant began kissing her; he pulled her clothing down half-way and inserted his finger into her vagina. Ms. Mullinex testified that she remembered that on this night, Teresa woke up and asked her father what he

was doing and that Appellant replied that he was checking the air in Teresa's wheelchair tires. Teresa testified that she did not recall such an incident.

Ms. Mullinex testified that during the summer of 1985, Appellant would make her meet him in the garage after everyone else in the house was asleep. He would pull his pants half-way down and make her stimulate his penis, he would then make her perform fellatio, instructing her to "lick back and forth on it." When he ejaculated, he would either put his semen on his stomach and make her wipe it off or put it on her stomach and he would wipe it off.

She also related that in the summer of 1986, Appellant told her to come into his bedroom. When she met him there, he took off her clothes and started kissing her. They both performed oral sex on each other. In the summer of 1987, the abuse continued as before, only Appellant attempted intercourse with Ms. Mullinex. She told Appellant that it hurt, and he quit, though a little of his penis did enter her vagina. During Thanksgiving of 1987, Ms. Mullinex's family came to Appellant's house to celebrate the holiday. Ms. Mullinex slept on the floor on a pallet between the living room and the den with her cousin Lee Ann. After everyone was in bed, Appellant laid down beside her and put his finger in her vagina. Ms. Mullinex pinched Lee Ann until Lee Ann woke up and saw what was happening.

In the summer of 1988, Appellant had a mattress in the garage where he would meet Ms. Mullinex. He penetrated her with his fingers and his penis, and made her perform fellatio. While this was happening the rest of the family was in the house, unaware of the events taking place in the garage. In the summer of

1989, Appellant would meet Ms. Mullinex in the garage or the basement and continue abusing her.

It was not until after the summer of 1989 that Ms. Mullinex informed an adult about the abuse. Sometime in the fall of 1989, Ms. Mullinex told a counselor at her school, a Ms. Clemens, about the abuse. No investigation was made regarding the complaint.

## I. ELECTION OF OFFENSES

In his first allegation of error, Appellant argues that the trial court erred in failing to inform the jury that the State had made an election as to which set of facts it would use to support each count of the indictment. The trial court ruled that the State, through its presentation of proof, had made an election as to specific incidents of abuse upon which the jury would be asked to find Appellant guilty of aggravated rape. We disagree. Because election involves Appellant's constitutional rights to protection against double jeopardy and to a unanimous jury verdict, we will consider the issue of election under the doctrine of plain error even though the issue was not presented on appeal. *See* State v. Leath, C.C.A. No.01-C01-9511-CC-00393, Macon County (Tenn. Crim. App., Nashville, February 10, 1998)(holding that error involving election is plain error).

The right to jury unanimity involves not only the requirement that the jury be unanimous as to which offense constitutes the crime for which a defendant is convicted, but also the right to unanimity among the jury members as to the specific act which constituted the offense. State v. Brown, 823 S.W.2d 576, 582 (Tenn. Crim. App. 1991). A trial court has the duty of requiring the State to elect

the particular act upon which it relies for conviction and to instruct the jury so that the verdict of each juror will be united as to one offense. <u>Burlison v. State</u>, 501 S.W.2d 801, 804 (Tenn. 1973). When the State presents proof on many offenses within an alleged time period, but neglects election, the jury is allowed to "reach into the brimming bag of offenses and pull out one for each count." <u>Leath</u>, C.C.A. NO.01-C01-9511-CC-00393 at 11 (*citing* <u>Tidwell v. State</u>, 922 S.W.2d 497 (Tenn. 1996)).

In the matter <u>sub judice</u>, in all but two of the counts, the State either drafted the indictment to reflect a specific sexual act or presented proof regarding a specific incident when the penetration was said to occur, thereby ensuring a unanimous jury verdict. However in counts two and four of indictment 6401, which alleged that Appellant "penetrated" Ms. Mullinex in the summers of 1985 and 1987, respectively, the State failed to elect, and presented proof only that multiple incidences occurred during those summers. "A conviction that is not unanimous as to the defendant's specific illegal action is no more justifiable than a conviction by a jury that is not unanimous on a specific count." <u>Leath</u>, C.C.A. NO.01-C01-9511-CC-00393 at 11 (*citing* <u>State v. Brown</u>, 823 S.W.2d 576, 583 (Tenn. Crim. App. 1991) (*quoting* <u>United States v. Beros</u>, 833 F.2d 455, 462 (3d Cir. 1987))). Therefore, we must reverse the judgment of the trial court as to these two counts.

Counts two and four of indictment 5531 both allege:

> [T]hat [the defendant] in the summer of 1988 . . . did unlawfully and feloniously sexually penetrate . . . [the victim] a child less that thirteen (13) years of age, by inserting his finger into her vagina . . .."

However, at trial the State presented proof of only one incident of digital penetration during the summer of 1988. Although the proof is sufficient to sustain

a single count with respect to this incident count four of indictment 5531 must be reversed and dismissed for insufficient evidence.  See, Tenn. R. App. P. 36

## II. JURY INSTRUCTIONS ON ELECTION.

As noted earlier, Appellant complains that the trial court did not adequately instruct the jury as to the requirement of unanimity on a particular set of facts alleged to constitute the criminal act.  Where the State presents evidence of numerous offenses, the trial court must augment the general jury unanimity instruction to insure that the jury understands its duty to agree unanimously to a particular set of facts.  A skeletal jury instruction of unanimity ferments a strong possibility of a composite jury verdict in violation of an appellant's constitutional rights.  Id. at 12 (citing State v. Brown, 823 S.W.2d at 583; State v. Forbes, 918 S.W.2d 431, 447 (Tenn. Crim. App. 1995)).

In all but counts two and four of indictment 6401, the State through its presentation of proof elected a specific type of penetration or incident so as to ensure a unanimous jury verdict.  Therefore, the need to augment the skeletal unanimity instruction was not triggered.  However, it was error to fail to instruct the jury in accordance with Leath, Brown and Forbes on counts two and four of indictment 6401.  This error also warrants a new trial with respect to those charges.

## III. PRIOR UNCHARGED ILLEGAL CONDUCT

In his next assignment of error, Appellant argues that the trial court erred in allowing the State to present testimony regarding incidents between Appellant and Ms. Mullinex which were outside the time frame of the indictment. The earliest date set forth in the presentment against Appellant is found in Count 1 of

case no. 6401 which charges Appellant with the sexual penetration of Ms. Mullinex Helton during "the summer of 1984." However, the State's first witness, Tina Helton Mullinex, herself, began the trial recounting an incident which occurred when she was "five or six", in 1982 or 1983. She testified that Appellant forced for to watch a pornographic movie entitled "Dr. Storm" and "touched" her and forced her to "touch" him. The defense made an objection that the incident she related was outside the scope of the indictment and in violation of the motion to disclose uncharged criminal conduct and a motion in limine regarding uncharged sexual conduct. The trial court nevertheless allowed the testimony into evidence. The State also presented the testimony of Candy Lee Ann Buchanan, who testified that Appellant showed her a pornographic video with the same content as the video Ms. Mullinex testified she was shown at the age of five.

In State v. Rickman, the Supreme Court held that:

testimony of the victim about other prior unindicted sex crimes allegedly committed by the defendant upon the victim does not corroborate the testimony of the victim that he or she suffered the attack for which the defendant is then being tried. Moreover, the prejudice resulting from such testimony outweighs its probative value.

876 S.W.2d 824, 830 (Tenn. 1994). It is obvious, therefore, that testimony concerning the alleged sexual abuse of Ms. Mullinex committed before the earliest date charged in the indictment was erroneously admitted into evidence.

The holding in Rickman does allow for a narrow exception which would permit evidence of uncharged crimes allegedly committed within the time frame of events described in an open dated indictment. Id. at 829. However, Ms. Buchanan's testimony regarding the pornographic video she was allegedly shown

in no way related to the time frame alleged in the indictment and was likewise improperly admitted into evidence.

The State does not dispute the fact that the admission into evidence of the testimony described above was error, but the State maintains that the error was harmless.  See Tenn. R. App. P. 36(b); Tenn. R. Crim. P. 52(a).  Because there is substantial evidence of Appellant's guilt in this record, this error, standing alone, would not warrant a reversal of the convictions in this case.  However, this error coupled with the prosecutor's improper comments compels us, for the reasons discussed infra., to afford Appellant a new trial on the remaining counts against him.

## IV. PROSECUTION ARGUMENT

Appellant complains that the State  improperly argued the "missing witness" doctrine, referred to uncharged criminal activity outside the scope of the indictment, and interjected personal beliefs and opinions. In State v. Philpott, this Court set out factors to be considered in making the determination whether a prosecutor's improper conduct could have affected the verdict to the prejudice of the defendant.   These factors are as follows:

1. the conduct complained of in light of the facts and circumstances of the case;

2. the curative measures undertaken;

3. the intent of the prosecutor in making the improper remarks;

4. the cumulative effect of the improper conduct and any other errors in the record; and,

5. the relative strength or weakness of the case.

State v. Philpott, 882 S.W.2d 394, 408 (Tenn. Crim. App. 1994)(*citing* Judge v. State, 539 S.W.2d 340, 344 (Tenn. Crim. App. 1976)).We consider each allegation in turn.

## A. MISSING WITNESS

Appellant contends that the trial court improperly permitted the State to argue the "missing witness argument" during closing argument. It is well settled that, "As a predicate for comment on a missing witness, the evidence must show that the witness had knowledge of material facts, that a relationship exists between the witness and the party that would naturally incline the witness to favor the party, and that the missing witness was available to the process of the Court for the trial." Delk v. State, 590 S.W.2d 435, 440 (Tenn. 1979).

In the matter sub judice, the witness to whom the State made repeated reference was Peggy Ihsan, who was Appellant's wife during the years listed on the indictments. During argument, when the State first made reference to Ms. Ihsan, Appellant objected and the trial court gave the following instruction to the jury:

> Ladies and gentlemen of the jury, these are arguments that you are hearing and have heard. I will tell you now, and will tell you again in a few minutes, this case is decided solely on the evidence that comes from the witness stand. You will notice that neither of these attorneys have been sworn, and put on the witness stand. What they are presenting to you is argument.

> Don't let me take away from you the fact that argument is designed to be helpful to you. That's the reason we have it. Each side wants to present to you their theory of the case. All I want you to remember is that argument is not evidence, but it is certainly something that you should consider in helping decide this case.

This instruction did not address the central problem with the State's argument. In fact, after the instruction the prosecutor continued to imply that Appellant's failure to call Ms. Ihsan was due to what her testimony would have been. The prosecutor's argument continued:

> Ladies and gentlemen of the jury, I think you can see the point with regard to that when Mr. Poole stands up and calls witness after witness after witness that lived in that house. All I'm asking is why didn't he call the wife that shared the bedroom with this defendant. I don't know what she would say, but why didn't he call her, the one who shared the bedroom with this defendant?

Because no proof had been presented that Ms. Ihsan fell into the category of a missing witness, the State's argument clearly constituted error.

Concluding that the remarks were in error, we must move to the issue of harm to Appellant. Considering the Philpott factors one at a time, we begin by considering the conduct complained of in light of the facts and circumstances of the case. The prosecutor's argument regarding the absence of Ms. Ihsan was significant in light of the facts presented at trial. Ms. Mullinex testified that much of Appellant's illegal conduct occurred at night when the rest of the

household assumed he was asleep in bed with his wife. The defense called various household members to rebut this notion. The implication that Ms. Ihsan was not called because she would have given testimony adverse to Appellant was clear.

Further, the curative measures undertaken by the trial court were cursory at best and did not stop the State's reference to the failure of the defense to call Ms. Ihsan. The court's instruction to the jury did nothing to correct the improper argument, but rather highlighted for the jury that such remarks could be considered in its deliberation.

The prosecutor in this matter clearly knew that his argument was improper. He realized that no foundation for such an argument had been made. Surely, in investigating the case during the preparation for trial, the prosecutor learned that Ms. Ihsan lived beyond the jurisdiction of the court. Even if the State did not have actual knowledge of that fact, the district attorney certainly was aware that he was required to put forth a showing of the witness' availability to the defense before such an argument could properly be made. Further, the State waited until its final closing, an argument to which the defense would not have the opportunity to answer, to spring this "missing witness argument." Such timing creates at least the appearance of an intentional interjection of improper argument into the trial.

The cumulative effect of this error must be regarded in conjunction with the other error discussed below in the analysis of Appellant's issues

concerning the argument of uncharged criminal conduct and the interjection of the prosecutor's personal beliefs and opinions.

## B. UNCHARGED CRIMINAL CONDUCT

Appellant also complains that in closing argument the State made repeated references to prior uncharged conduct outside the scope of the indictment. Appellant failed to object at trial to the argument regarding the prior uncharged conduct. Therefore, this issue ordinarily would be waived. Tenn. R. App. P. 36(a). However, in light of our concern that improper argument prevented Appellant from receiving a fair trial, we address this issue on the merits. *See* Tenn. R. Crim. P. 52(b). Appellant specifically contends that the State erred in arguing that:

> Tina told you with regard to this indictment that in the summer of '89 that he showed her a movie, a video.[1] She said the name of it was Doctor Storm, and she said it showed sexual activity, and the one thing that stuck out in her mind, that little girl's mind, is she said she remembered a girl being nude, and on all fours on knees and her hands, and man entering her from behind, and there were some pearls -- I believe she said pearls -- that the guy had in this girl's mouth. That stuck out in her mind, and she remembered that, and said Uncle Keith played that for her.

As discussed earlier, Appellant objected early in the trial to the introduction of evidence relating to events outside the time span of the indictment. The trial court allowed the evidence mentioned in closing argument into evidence over Appellant's objection. Because we held that the admission of this evidence was erroneous, we also hold that it was error to allow

---

[1] Ms. Mullinex actually testified that Appellant showed her the pornographic movie when she was "five or six" which would have been in 1982 or 1983.

argument regarding this evidence. We must therefore consider the <u>Philpott</u> factors in deciding whether this error affected the result of the trial.

Although this argument by the prosecuting attorney, when taken in the context of the State's closing argument as a whole, appears to be an attempt to recount the evidence presented at trial, the cumulative effect of this error when viewed in light of the improper "missing witness argument" seems fairly serious. Not only was inadmissible evidence presented to the jury, the prosecution compounded that error by presenting argument based on that evidence. The combination of these two improper arguments may have served to divert the jury's attention from admissible reliable evidence to inadmissible evidence and speculation.

No curative measures were undertaken by the trial court. This was perhaps the result of the defense's failure to object. However, in light of the trial court's erroneous admission of evidence regarding the video tape incident, any objection by the defense probably would have been overruled. The trial court did not instruct the jury that it should not consider this improper argument, leaving the impression that this argument was a valid consideration for the verdict.

## C. PROSECUTOR'S PERSONAL BELIEFS AND OPINIONS

Appellant also alleges that the State improperly interjected the District Attorney's personal opinions and feelings into the closing argument. Appellant

objected twice to the State's comments and his objections were sustained. The question presented is whether the argument so tainted the trial that the verdict cannot be relied upon. It is impossible to say beyond a reasonable doubt that it did not.

The portions of the prosecutor's argument to which Appellant objects came at the end of the State's initial closing argument: "I don't know how many folks were in the house when it happened. I don't know if everytime little Teresa was in the bedroom, but I know where Keith Hodge was. Tina told me where he was when she was abused." And again in the State's final closing argument:

> I guarantee the City of Gatlinburg gives vacation days... I believe my daddy hung the moon, We've had our problems, but I love my daddy, and I would never believe something like that about my daddy. But you know, the last to know is your family, especially when you're talking about child sexual abuse. There's preachers been guilty of this, there's boy scout leaders that have been guilty of this....Well, I'll tell you what's not rational is child abuse. You know, that doesn't make sense, but I know it happens....She said, "Tina went into the restroom with some boys and come out and said, 'I gave him a blow job.'" A twelve year old girl. I think it reflected more on her than it did little Tina for telling a story like that she took her to a party like that, her two or three or four years older."

Following Appellant's objections, the trial court admonished the jury saying:

> These are arguments that you are hearing and have heard. I will tell you now, and will tell you again in a few minutes, this case is decided solely on the evidence that comes from the witness' stand. You will notice that neither of these attorneys have been sworn, and put on the witness stand. What they are presenting to you is argument....All I want you to remember is that argument is

not evidence, but it is certainly something that you should consider in helping decide this case.

The law is clear on this point:

> (T)he prosecutor is an advocate, and is entitled to pursue his role with thoroughness and vigor. But, as set out in Justice Southerland's classic opinion in <u>Berger v. United States</u>, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935), the prosecutor also acts [as]:

> > ...the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the two fold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor, indeed he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one. It is fair to say that the average jury, in a greater or lesser degree, has confidence that these obligations, which so plainly rest upon the prosecuting attorney, will be faithfully observed.

> Consequently, improper suggestions, insinuations, and especially assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none.

Judge v. State, 539 S.W.2d 340, 344-45 (Tenn. Crim. App. 1976).

The conduct of the prosecuting attorney went beyond the bounds of proper argument. In light of the trust with which the jury views the attorneys for the State, we cannot find that the impermissible comments did not influence the jury's verdict.

In light of the cumulative effect of all the improper remarks made by the prosecutor during closing argument, we cannot say that these errors did not impermissibly infect Appellant's trial with unfair prejudice. Therefore we find Appellant must be afforded a new trial as to all charges against him.

## V. INTRODUCTION OF PRIOR CONSISTENT STATEMENTS

Appellant complains that the trial court erred in admitting the testimony of two school officials to whom Ms. Mullinex reported the abuse by Appellant. It is true that ordinarily prior consistent statement of a witness are not admissible to bolster the witness' credibility. State v. Braggs, 604 S.W.2d 883, 885 (Tenn. Crim. App. 1980). However, "prior consistent statements may be admissible...to rehabilitate a witness when insinuations of recent fabrication have been made, or when deliberate falsehood has been implied. State v.

<u>Benton</u>, 759 S.W.2d 427, 433 (Tenn. Crim. App. 1988). Before prior consistent statements may be admissible, the witness' testimony must have been assailed or attacked to the extent that the witness' testimony needs rehabilitating. <u>Benton</u>, 759 S.W.2d at 434. In the matter <u>sub judice</u>, during cross-examination, the defense repeatedly asked Ms. Mullinex whether she ever told anyone of the abuse and whether she told all the details she related at trial to the people she told earlier. The testimony of Mr. Townsend and Ms. Hughes was properly admitted to show that Tina Helton Mullinex did tell about the abuse. This issue is without merit.

## VI. EVIDENCE AT SENTENCING HEARING

Finally, Appellant contends that the trial court erred in receiving testimony at the sentencing hearing regarding Appellant's molestation of three women other than Tina Helton Mullinex. Tennessee Code Annotated § 39-13-204 permits, at a sentencing hearing, evidence "as to any matter that the court deems relevant to the punishment," including (but not limited to) "the nature and circumstances of the crime." <u>State v. Nichols</u>, 877 S.W.2d 722, 731 (Tenn. 1994). Evidence is relative to the punishment, and thus admissible at the sentencing hearing, only if it is relevant to an aggravating circumstance, or to a mitigating factor raised by the defendant. <u>State v. Bates</u>, 804 S.W.2d 868 (Tenn. 1991)(*citing* <u>State v. Cozzolino</u>, 584 S.W.2d 765, 768 (Tenn. 1979)). The testimony of these witnesses was properly admitted to show that Appellant had a history of criminal behavior in addition to that necessary to establish the appropriate range. Tenn. Code Ann. § 40-35-114(1). This issue is without merit.

Therefore, the judgment of the trial court is reversed and remanded for a new trial on all counts except count four of indictment 5531 which is dismissed for the reasons stated hereinabove.

_____
JERRY L. SMITH, JUDGE


CONCUR:


_____
GARY R. WADE, PRESIDING JUDGE


_____
DAVID H. WELLES, JUDGE