IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs August 22, 2000

## STATE OF TENNESSEE v. CHARLES SHERMAN THAXTON

**Appeal from the Criminal Court for Knox County**
**No. 63427     Ray L. Jenkins, Judge**

---

**No. E1999-02091-CCA-R3-CD**
**October 10, 2000**

---

The defendant appeals his convictions for two counts of aggravated sexual battery. He contends that the trial court erred (1) by allowing rebuttal testimony of a prior consistent statement and (2) by failing to give a limiting instruction. We affirm the judgment of the trial court.

**Tenn. R. App. R. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which DAVID H. WELLES and ROBERT W. WEDEMEYER, JJ., joined.

Mark E. Stephens, District Public Defender, and David Gall, Assistant District Public Defender, for the appellant, Charles Sherman Thaxton.

Paul G. Summers, Attorney General and Reporter; R. Stephen Jobe, Assistant Attorney General; Randall E. Nichols, District Attorney General; and Charme J. Knight, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The defendant, Charles Sherman Thaxton, appeals as of right his convictions for two counts of aggravated sexual battery against his stepdaughter. The trial court allowed Department of Children's Services Investigator Debbie Green to testify regarding statements the victim made to her. The defendant contends that the trial court erred because (1) Ms. Green's testimony was an inadmissible prior consistent statement and (2) it failed to give a limiting instruction to the jury as to the effect of the prior consistent statement.

At trial, Knoxville Police Department Officer Gary Anders testified as follows: On May 16, 1997, acting upon Investigator Starr Perrin's request, he interviewed the defendant. He read the defendant his Miranda rights, and the defendant signed a waiver. The defendant stated that he had entered the victim's bedroom on two occasions and fondled her vaginal area while she was in bed.

The defendant denied that the victim touched his penis. Officer Anders wrote the defendant's statements in a report, which he sent to Investigator Perrin.

Knoxville Police Department Investigator Starr Perrin testified as follows: On May 12, 1997, the Department of Children's Services (DCS) notified her of a complaint of sexual abuse. On May 14, 1997, DCS Investigator Debbie Green interviewed the victim, which Investigator Perrin observed from behind a two-way mirror. She then contacted the defendant, who agreed to meet her on May 16, 1997, for questioning. At the interview, she read the defendant his Miranda rights, and he signed a waiver. After talking to the defendant for twenty minutes, she asked Officer Anders to talk with him. She waited in her office while Officer Anders questioned the defendant. After about an hour, Officer Anders came to her office and told her that the defendant wanted to speak to her. When she returned to the interview room, the defendant made the following statement:

> I did fondle [the victim] on at least two separate occasions. One time under her clothes and another time over her clothes. I also had her touch my penis on one occasion over my clothes, undershorts. This happened on Cook Drive within the last two months (1997). I can't remember the first time, only that it was downstairs in the living room at night. She told me to quit and I quit. The second time was upstairs, she was getting out of the tub going to her bedroom, I touched her in the hallway, she had no clothes on, just panties. This was after Christmas, and Easter, just before Easter. I did know her age was eight years old.

Because the defendant did not want to write his statement down, Investigator Perrin wrote it for him, and the defendant signed it. On cross-examination, she stated that she did not tape the interview.

Nora Thaxton, the defendant's wife and the victim's mother, testified as follows: She and her three children lived with the defendant when the sexual abuse occurred. The defendant helped care for her children, which included supervising their baths and putting them to bed. The first time that she heard about the abuse was when she received a call from the Boys and Girls Club. When she went to the club, the victim told her that the defendant had been touching her, but she did not discuss the details. The victim asked her on several occasions what would happen if she lied. However, when she asked the victim if she had lied, the victim said that she had not.

The victim testified as follows: In March through May of 1997, she lived with her mother, two siblings, and the defendant. She said that on more than one occasion when she was in her bedroom, the defendant touched her front, bottom private parts. When she told the defendant to stop, he did. She did not remember if this occurred at night, if it was under or over her clothes, or if anyone else was in the room. She also did not remember if the defendant ever made her touch his private parts.

The victim testified that she told one of her teachers, Mr. Cruze, about the defendant touching her. She also told Ms. Carol and Ms. Angie, who worked at the Boys and Girls Club. Ms. Angie called the victim's mother, and when she arrived at the club, the victim told her about the defendant

touching her. The victim also talked to a woman from DCS about the touching. She did not remember if she gave any of these people more details about the touching.

On cross-examination, the victim said that a friend at school told her that she had been touched improperly. She encouraged the friend to tell Mr. Cruze, and she went with her to tell him. The victim did not tell Mr. Cruze at this time that she had been touched. When she did tell Mr. Cruze about the defendant touching her, it made her worry that her mother would be mad at her. The victim said that she knew her mother would still love her even if she told a lie. She admitted that she told a neighbor that the defendant never touched her. However, she said that because she was tired of everyone asking her about it.

The defendant testified as follows: He helped his wife care for her children, including putting them to bed. When Investigator Perrin interviewed him, he told her that he did not touch the victim. At some point, she left and Officer Anders questioned him. He told Officer Anders that he did not touch the victim sexually. When he told Officer Anders that he touched her private parts, Officer Anders would not allow him to explain that he was referring to times when he gave her a bath or when he put medicine on rashes which she developed. He never told Officer Anders that he went into the victim's bedroom and fondled her. On cross-examination, he acknowledged that the voluntary statement of facts contained his signature and initials, but he insisted that he signed and initialed a blank sheet of paper. He suggested that the written statement must have been added later. He stated that Investigator Perrin, Officer Anders, and the victim were lying.

Angie Tucker of the Boys and Girls Club of Greater Knoxville testified that on May 8, 1997, the victim told her that the defendant had been touching her. Ms. Tucker said that she called the victim's mother, to whom the victim told the same story.

Debbie Green, an investigator for DCS, testified as follows: She interviewed the victim on May 12, 1997, and the victim told her the following: One Friday night when she was in bed asleep, the defendant came into her room, got into her bed, and rubbed her vaginal area over her panties. The defendant pulled down his pants to his knees and took her hand and made her rub his penis over his underwear. She thought that this lasted for ten to fifteen minutes until she heard a knock at the front door. At that point, the defendant told her not to tell anyone and left the room.

On appeal, the defendant argues that the trial court erred in ruling that Ms. Green's testimony was admissible as a prior consistent statement. When the state asked her what the victim said in the interview, the defendant objected on hearsay grounds. The state responded that it was a prior consistent statement and admissible because the victim's credibility had been sufficiently attacked. The trial court ruled that the testimony was admissible as a prior consistent statement because there had been an allegation of recent fabrication.

Generally, prior consistent statements are not admissible to bolster a witness's credibility. State v. Hodge, 989 S.W.2d 717, 725 (Tenn. Crim. App. 1998) (citing State v. Braggs, 604 S.W.2d 883, 885 (Tenn. Crim. App. 1980)). However, three exceptions to this general rule exist. First, a

"prior consistent statement may be admissible . . . to rehabilitate a witness when insinuations of recent fabrication have been made or when deliberate falsehood has been implied." State v. Benton, 759 S.W.2d 427, 433 (Tenn. Crim. App. 1988). In such a situation, a prior consistent statement is allowed to show that the trial testimony is consistent with what the witness said when no influence or motive to lie existed. State v. Sutton, 155 Tenn. 200, 204, 291 S.W. 1069, 1070 (1927). Second, a prior consistent statement may be admissible when a witness is impeached through the introduction of a prior inconsistent statement that suggests that the witness's testimony was either fabricated or based upon faulty recollection. State v. Meeks, 867 S.W.2d 361, 374 (Tenn. Crim. App. 1993). Moreover, "the impeaching attack which allows for corroboration may occur during cross-examination of the witness . . . . Under such circumstances, the [witness's] statement made before the inconsistent statement but which was consistent with his trial testimony" is admissible to rehabilitate the witness. Id. (citations omitted). Third, a prior inconsistent statement may be admissible when a witness's prior statement is used out of context to cross-examine the witness. State v. Boyd, 797 S.W.2d 589, 593-94 (Tenn. 1990).

The defendant contends that the prior consistent statement was inadmissible. However, we note that the defendant addressed only the first and third exceptions in his brief. The state contends that both the first and second exceptions apply, making the statement admissible. The defendant argues that the first exception does not apply because he attacked the victim's testimony as an original fabrication, not as a recent fabrication. The defendant alleged at trial that the victim's initial story was false and that the motive to testify falsely, the victim's sympathy for a classmate, arose before her initial disclosure. The state argues, however, that the defendant also attacked the victim's testimony as a fabrication because she was afraid to withdraw her statements and tell the truth at trial. The state asserts that this motive – the victim's fear of withdrawing her false allegations – came into existence after her initial disclosure, and, therefore, the victim's statement to Ms. Green occurred prior to the existence of this motive. We disagree. The defendant attacked the victim's testimony by suggesting that the allegation was a lie from the beginning. While the defendant asked the victim whether she knew "right now what [she] should do," this does not imply that she was recently influenced or had a new motive to fabricate her testimony. Therefore, the prior consistent statement was not admissible under the first exception.

However, the victim's prior consistent statement is admissible under the second exception. In the present case, her testimony was attacked on cross-examination with a prior inconsistent statement about her telling a neighbor that the defendant did not touch her. Once impeached by this prior inconsistent statement, a consistent statement made before the inconsistent one becomes admissible to refute the impeachment. Meeks, 867 S.W.2d at 374. Here, the state offered Ms. Green's testimony for this purpose. Thus, Ms. Green's testimony regarding the prior consistent statement was admissible if the statement was made before the inconsistent one. While the record shows that Ms. Green interviewed the victim on May 12, 1997, just a few days after the victim's initial disclosure, it does not indicate when the victim made the inconsistent statement to her neighbor. However, the victim did state that she made the inconsistent statement because she was tired of people asking her about the incidents. This, along with the absence of a contrary argument

from the defendant, indicates that the interview with Ms. Green occurred before the victim's inconsistent statement. Therefore, the prior consistent statement was properly admitted.

The defendant also argues that even if the prior consistent statement was admissible, the trial court erred by failing to give a limiting instruction as to its effect. A review of the record reveals that the defendant did not request a limiting instruction. Generally, if such an instruction is not requested, then the issue is waived. See Tenn. R. Evid. 105; State v. Smith, 24 S.W.3d 274, 279 (Tenn. 2000); State v. Robinson, 971 S.W.2d 30, 43 (Tenn. Crim. App. 1997). We note, though, that in the case of the admission of a prior inconsistent statement for impeachment purposes, a limiting instruction should be given, even when not requested, if the state's proof is weak and the prior statement is very damaging. See State v. Reece, 637 S.W.2d 858, 861 (Tenn. 1982). Even if, for argument's sake, we were to apply that principle to the present circumstance, it would avail the defendant nothing. The state's proof, which included the victim's testimony as well as the defendant's voluntary confession, is not weak. We do not consider the statement very damaging when viewed relative to the other evidence. Therefore, the defendant has waived this issue.

Based upon the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
JOSEPH M. TIPTON, JUDGE