IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs December 4, 2001

**STATE OF TENNESSEE v. AVIS NEAL**

**Appeal from the Criminal Court for Shelby County**
**No. 97-09071     W. Fred Axley, Judge**

**No. W2001-00374-CCA-R3-CD - Filed January 28, 2002**

The Defendant, Avis Neal was convicted by a Shelby County jury of one count of rape of a child. After a sentencing hearing, he was sentenced as a Range I standard offender to twenty years in the Department of Correction. In this appeal, the Defendant contends that (1) the trial court erred in admitting testimony concerning statements made by the victim to her mother, (2) the trial court's reasonable doubt instruction was deficient, (3) the State failed to make a proper election, (4) the evidence is insufficient to support a verdict of guilty beyond a reasonable doubt, and (5) the trial court erred in denying the Defendant's motion for new trial due to the Defendant's out of court contact with a juror. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which GARY R. WADE, P.J. and DAVID G. HAYES, J., joined.

Christine W. Stephens, Memphis, Tennessee, for the appellant, Avis Neal.

Paul G. Summers, Attorney General and Reporter; Elizabeth B. Marney, Assistant Attorney General; William L. Gibbons, District Attorney General; and Julie Mosley, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

In early September 1996, the Defendant was living with Rochelle James, a long-time girlfriend and mother of his three children. The oldest of the children, a ten year old daughter, is the victim in this case. The victim testified that shortly after she started school in 1996, the Defendant entered her room while her mother was at work and penetrated her vagina with his finger. The victim pretended to be asleep during the assault, and told no one of the assault afterwards. A few weeks later, the Defendant again entered the victim's room and penetrated her vagina, this time with his penis. Again, the victim pretended to be asleep during the rape, and told no one afterwards. The next day, Ms. James, the victim's mother, noticed a blood stain on the victim's panties and asked

if the victim had begun to menstruate. The victim said she did not know, and Ms. James explained to her what to expect during menstruation. Between Thanksgiving and Christmas of the same year, the Defendant entered the victim's room again and penetrated both her vagina and her anus with his penis. The victim again pretended to be asleep during the rape. The victim testified that she told no one because she feared her father would harm her or her family.

On January 22, 1997, the Defendant again entered the victim's room, removed her from the bed she was sharing with her younger brother and sister, placed her on the floor and penetrated her vagina and anus with his penis. The next day, the victim recorded the attack in a diary she received for Christmas. The diary entry for January 23, 1997 reads, "[m]y dad is a bitch because he put his dick in me and he does – and I don't like my daddy."

In early February, the victim and Ms. James were arguing about a poor grade on the victim's report card when the victim finally told Ms. James about the abuse. Ms. James testified that she took the victim to a clinic to be examined. Ms. James further stated that she remembered the blood stain on the victim's panties, and that she had asked the victim if she was menstruating. Ms. James testified that the victim's grades dropped between September of 1996 and February of 1997, and that she was punishing the victim for a bad report card on the day the victim told her about the abuse.

Sally DiScenza, a family nurse practitioner specializing in examining victims of sexual assault and an expert in the field of forensic examination, examined the victim and found evidence of penetration. The victim's perihymenal tissue was abnormally narrowed, indicating some form of penetration. The victim's hymen tissue was also irregular, indicating trauma due to penetration. The victim's vaginal opening was fifteen millimeters, much larger than the seven to ten millimeters expected for a normal ten year old. The victim also had scarring around her anus, indicating penetration. Ms. DiScenza testified that the victim's description of the Defendant's abuse was consistent with the trauma to her vagina and anus.

Several friends of the Defendant testified regarding his reputation for truth and honesty. Vannessa Bryson-Neal, the Defendant's wife, testified that she had been dating the Defendant sporadically for about twelve years. Ms. Bryson-Neal stated that she has had several altercations, some violent, with Ms. James about the Defendant. The Defendant testified that he dated both Ms. James and Ms. Bryson-Neal at different times over the past twelve years, and he believed that Ms. James was very jealous of Ms. Bryson-Neal. The Defendant further testified that he did not abuse his daughter in any way, and that he could not explain her injuries.

**VICTIM'S STATEMENTS TO MOTHER**

The Defendant first argues that the trial court erred by admitting testimony by Ms. James that the victim told her about the abuse. The Defendant contends that this testimony was inappropriate hearsay testimony admitted contrary to Tennessee Rule of Evidence 802. We agree that the trial court erred in admitting the statement, but find the error to be harmless.

Tennessee Rule of Evidence 801 defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tenn. R. Evid. 801(c). Rule 802 makes all hearsay inadmissible unless the statement falls under one of the exceptions listed in Rule 803. See Tenn. R. Evid. 802, 803. At trial, the following exchanged occurred during Ms. James' testimony:

| [Assistant District Attorney]: | And what made it end? |
| --- | --- |
| [Ms. James]: | My daughter came to me and told me that her father had been messing with her. |
| [Defense Attorney]: | Objection. |
| The Court: | State your grounds. Sir? |
| [Defense Attorney]: | I object on the grounds of hearsay, Your Honor. |
| . . . . | |
| The Court: | Do you want to respond? |
| [Assistant District Attorney]: | This is not going to the matter asserted. It's going to show what she did and why she did it and her state of mind. |
| The Court: | That's the exception. I will give an instruction to the jury. |

Immediately following the exchange, the trial court gave the jury a limiting instruction explaining that they could consider the statement in light of Ms. James' actions after hearing the statement and not for the truth of the statement itself. Ms. James then testified that her daughter told her that the Defendant "took his thing out and stuck it in her."

The State argues that the testimony was elicited from Ms. James, not to prove that the rapes actually occurred, but to provide the link between the victim's testimony and the actions of Ms. James that followed. Therefore, the State asserts that the trial court properly overruled the Defendant's objection because the statement in question was not hearsay. We must respectfully disagree.

The testimony of Ms. James that the victim said the Defendant was "messing" with the victim and "put his thing in her" can have no other effect but to corroborate and bolster the victim's testimony that she was raped by the Defendant. In our view, the testimony was hearsay offered to prove the truth of the statement, that the Defendant was sexually abusing the victim, and the trial court erred in admitting the testimony. See Tenn. R. Evid. 801. However, in light of the proof presented by the State, the limiting instruction given by the trial judge, and, specifically, the testimony of the victim that the Defendant was abusing her, we conclude that Ms. James testimony was cumulative of the proof already presented, and the trial court's error was clearly harmless. See Tenn. R. App. P. 36(b); Tenn. R. Crim. P. 52 (a); Chapman v. California, 386 U.S. 18, 23-24 (1967); Phipps v. State, 474 S.W.2d 154, 156 (1971); State v. Kennedy, 7 S.W.3d 58, 69 (Tenn. Crim. App. 1999). This issue is without merit.

**REASONABLE DOUBT INSTRUCTION**

The defendant next contends that the trial court erred in its reasonable doubt instruction to the jury. In particular, he argues that the court's failure to issue the standard pattern jury instruction containing "moral certainty" language lowered the standard of proof by which the State had to prove him guilty of the offense. We must respectfully disagree.

The defendant asked that the trial court instruct the jury on reasonable doubt by use of Tennessee Pattern Jury Instruction 2.03, which contains language that the jury must find the defendant guilty to a moral certainty. The trial court refused the request, opting instead to use Tennessee Pattern Jury Instruction 2.03(a), which provides as follows:

> A reasonable doubt is a doubt based upon reason and common sense after careful and impartial consideration of all the evidence in this case. It is not necessary that the defendant's guilt be proved beyond all possible doubt, as absolute certainty of guilt is not demanded by the law to convict of any criminal charge. A reasonable doubt is just that--a doubt that is reasonable after an examination of all the facts of this case. If you find that the state has not proven every element of the offense beyond a reasonable doubt, then you should find the defendant not guilty.

The defendant complains that this instruction fails to adequately define the meaning of reasonable doubt in the context of a criminal trial, allowing the jury to convict a defendant on less proof than that required by the "moral certainty" language of Tennessee Pattern Jury Instruction 2.03. We have previously rejected similar challenges to the use of Tennessee Pattern Jury Instruction 2.03(a). See, e.g., State v. Ronald D. Correll, No. 03C01-9801-CC-00318, 1999 WL 812454, at * 8 (Tenn. Crim. App., Knoxville, Oct. 8, 1999), perm. to appeal denied (Tenn. April 24, 2000) (holding that T.P.I.-Crim. 2.03(a) is consistent with principles of due process); State v. Tony Fason, No. 02C01-9711-CR-00431, 1999 WL 588150, at *4 (Tenn. Crim. App., Jackson, Aug. 6, 1999), perm. to appeal denied (Tenn. Feb. 7, 2000) (" 'Moral certainty' is not required language in a jury instruction."); State v. Roscoe L. Graham, No. 02C01-9507-CR-00189, 1999 WL 225853, at *12 (Tenn. Crim. App., Jackson, April 20, 1999) (holding that reasonable doubt instruction omitting language of moral certainty is adequate). In State v. Melvin Edward Henning, No. 02CO1-9703-CC-00126, 1997 WL 661455, at *9 (Tenn. Crim. App., Jackson, Oct. 24, 1997), we rejected a challenge that Tennessee Pattern Jury Instruction 2.03(a) was constitutionally deficient because it did not contain "moral certainty" language:

> Tennessee Pattern Instruction 2.03(a) tracks virtually identical language of pattern reasonable doubt instructions approved by a majority of the federal circuits. See, e.g., United States v. Velasquez, 980 F.2d 1275, 1278 (9th Cir.1992), cert. denied, 508 U.S. 979 (1993); United States v. Campbell, 874 F.2d 838, 841 (1st Cir.1989); United States v. Hall, 854 F.2d 1036, 1039 (7th Cir.1988); United States v. Kirby, 838 F.2d 189, 191-192 (6th Cir.1988); United States v. Colon, 835 F.2d 27, 31-32 (2nd Cir.1987), cert. denied, 485 U.S. 980 (1988); United States v. Dilg, 700 F.2d 620 (11th Cir.1983); United States v. Alonzo, 681 F.2d 997, 1002 (5th Cir.), cert.

denied, 459 U.S. 1021 (1982); United States v. Robertson, 588 F.2d 575, 579 (8th Cir.1978), cert. denied, 441 U.S. 945 (1979). Moreover, the questioned language "based upon reason and common sense" and "absolute certainty is not required" has repeatedly been upheld as passing constitutional muster. See, e.g., United States v. Kime, 99 F.3d 870 (8th Cir.1996), cert. denied,-- U.S.--, 117 S.Ct. 1015 (1997); United States v. Miller, 84 F.3d 1244 (10th Cir.), cert. denied,--U.S.--, 117 S.Ct. 443 (1996) overruled on other grounds by United States v. Holland, 116 F.3d 1353 (10th Cir.1997); United States v. Campbell, 61 F.3d 976, 980-981 (1st Cir.1995), cert. denied, --- U.S. ----, 116 S.Ct. 1556 (1996); Hall, 854 F.2d at 1038- 1039; United States v. Rahm, 993 F.2d 1405, 1412 (9th Cir.1993).

We do not find the instruction to be constitutionally deficient. We find no reasonable likelihood that the jury understood the instruction to permit conviction after anything but a process of careful deliberation or upon less than proof beyond a reasonable doubt. This issue is without merit.

## ELECTION OF OFFENSE

The Defendant also contends that the State did not properly elect a specific incidence upon which the State relied to support the rape charge. During the State's closing argument, the trial court interrupted the State's attorney in order to remind him to make an election. The State informed the trial court, and the jury during his argument, that the State would rely on the rape that occurred on January 22, 1997. Based upon this, the Defendant argues that he was not given notice of the charges brought against him and that the instruction given by the trial court was insufficient to ensure unanimity as to the specific illegal action of which the Defendant was convicted. We must respectfully disagree.

The right to jury unanimity requires that the jury be unanimous as to the specific act which the Defendant committed upon which their judgment rests. See State v. Hodge, 989 S.W.2d 717, 720 (Tenn. Crim. App. 1998); State v. Brown, 823 S.W.2d 576, 582 (Tenn. Crim. App. 1991). A trial court has the duty of requiring the State to elect the particular act upon which it relies for conviction and to instruct the jury so that the verdict of all jurors will be united as to one offense. See Burlison v. State, 501 S.W.2d 801, 804 (Tenn.1973). When the State presents proof on many offenses within an alleged time period, but neglects election, the jury is improperly allowed to "reach into the brimming bag of offenses and pull out one for each count." Tidwell v. State, 922 S.W.2d 497, 501 (Tenn.1996).

Furthermore, a conviction that is not unanimous as to the defendant's specific illegal action is no more justifiable than a conviction by a jury that is not unanimous on a specific count. See Hodge, 989 S.W.2d at 721. Where the State presents evidence of numerous offenses, the trial court must augment the general jury unanimity instruction to insure that the jury understands its duty to agree unanimously to a particular set of facts. Id. A skeletal jury instruction of unanimity ferments

a strong possibility of a composite jury verdict in violation of an appellant's constitutional rights. Id.

Pursuant to a pretrial motion, the Defendant received a Bill of Particulars from the State that detailed the five specific incidents that the State sought to prove at trial. Included in the Bill of Particulars was the vaginal and anal penetration that occurred on January 22, 1997. Based on the Bill of Particulars provided the Defendant by the State, we find that the Defendant had adequate notice of the specific conduct for which he was to be prosecuted.

Furthermore, the instruction given by the trial court was sufficient to ensure that the verdict returned by the jury was unanimous with regard to the specific conduct of the Defendant. The trial court's instruction stated

> The alleged victim,[name omitted]  in indictment number 97-09071 has testified to several alleged sexual encounters with the defendant. The State must make an election as to which particular offense the Jury must consider in arriving at your verdict.
>
> In indictment number 97-0971 charging the defendant with the offense of Rape of a Child the Court charges you that you may consider the testimony concerning the alleged rape that occurred at the family's apartment on January 22, 1997.
>
> You may also consider all of the alleged incidents that occurred before and after that date in arriving at your verdict.

Additionally, the State's attorney informed the jury during closing arguments that their verdict must be unanimous in regard to a specific instance of child rape.

> There were at least five [instances of abuse] that [the victim] named. You have to all agree on one. That's why its unanimous. You have to be unanimous about not only that he's been raping her, but that this particular rape occurred. Does that make sense to everybody?
>
> And I have to pick the one that you have to agree on, yes or no.
>
> Now there are five different incidents that she described. Some of them she was able to date very specifically. Some of them she was not able to date very specifically.
>
> And you can consider all of that when you determine whether or not you think she is telling the truth and how reasonable it is to believe and how it fits into conjunction with the physical evidence as far as her injuries.
>
> But I'm going to make an election, which is what they call it, again, another technical term, of that January 22nd, 1997 rape.
> ....
> Okay. Now you can talk about the others and consider that all together as part of the proof, but you have to all agree that that particular incident occurred.

The trial court's instruction concerning the prosecution's election of the January 22, 1997 rape, together with the prosecutor's comments during closing argument, were sufficient to ensure the unanimity of the jury's verdict.[1]  Therefore, this issue is without merit.

## SUFFICIENCY

Next, the Defendant contends that, due to the lack of DNA evidence linking him to the rape of the victim, the evidence is insufficient to support a finding of guilt beyond a reasonable doubt. We must respectfully disagree.

Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." Evidence is sufficient if, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Smith, 24 S.W.3d 274, 278 (Tenn. 2000). In addition, because conviction by a trier of fact destroys the presumption of innocence and imposes a presumption of guilt, a convicted criminal defendant bears the burden of showing that the evidence was insufficient. See McBee v. State, 372 S.W.2d 173, 176 (Tenn. 1963); see also State v. Buggs, 995 S.W.2d 102, 105-06 (Tenn. 1999); State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

In its review of the evidence, an appellate court must afford the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." Tuggle, 639 S.W.2d at 914; see also Smith, 24 S.W.3d at 279. The court may not "re-weigh or re-evaluate the evidence" in the record below. Evans, 838 S.W.2d at 191; see also Buggs, 995 S.W.2d at 105. Likewise, should the reviewing court find particular conflicts in the trial testimony, the court must resolve them in favor of the jury verdict or trial court judgment. Tuggle, 639 S.W.2d at 914. All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact, not the appellate courts. See State v. Morris, 24 S.W.3d 788, 795 (Tenn. 2000); State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987).

In challenging the sufficiency of the evidence relied upon to convict him, the Defendant contends that, without DNA evidence, no reasonable jury could have found him guilty beyond a reasonable doubt. We disagree. The victim testified that the Defendant penetrated her vagina and anus with either his finger or his penis on numerous occasions. After one such occasion, the victim's mother noticed a blood stain in the victim's underwear. The victim recorded her anger regarding her father's assaults in her diary. Finally, Ms. DiScenza, a family nurse practitioner specializing in

---

[1] Clearly the better practice is for the trial judge to give the jury an enhanced jury unanimity instruction advising that the jury must unanimously agree that the facts relied upon for the conviction relate to the particular offense elected by the State.

examining victims of sexual assault and an expert in the field of forensic examination, examined the victim and discovered injuries to the victim's vagina and anus that could only be caused by some form of penetration. Ms. DiScenza testified that the type of injuries she discovered were consistent with the victim's description of the Defendant's abuse.

We find ample evidence to support the jury's verdict. This issue is without merit.

## CONTACT WITH A JUROR

Finally, the Defendant asserts that he is entitled to a new trial due to his alleged contact with a juror during his trial. At the hearing on the Motion for New Trial, the Defendant presented the testimony of a juror from his trial. The juror stated that during the trial of the Defendant, she and the Defendant rode on the same elevator. The juror testified that she was never alone on the elevator with the Defendant, and she did not communicate with the him in any way, however, the incident frightened her. The juror mentioned the incident to two other jurors immediately after it happened, but the incident was never mentioned after that.

It is the law in Tennessee that an unexplained sequestered juror conversation with a third party is good cause for a new trial. See State v. Blackwell, 664 S.W.2d 686, 689 (Tenn.1984). However, when a jury is not sequestered, the validity of a verdict is questionable only when there is extraneous prejudicial information or any outside influence brought to bear on a juror. Id. In the present case, the jury was not sequestered, and the burden is on the Defendant's to show that the juror in question received prejudicial information or was subjected to outside influence.

In Blackwell, the Supreme Court adopted Rule 606(b) of the Federal Rules of Evidence and defined the type of evidence admissible from a juror to impeach a jury verdict. This holding, subsequently established as Rule 606(b) of the Tennessee Rules of Evidence, prohibits a juror from giving testimony on any matter or statement occurring during the course of the jury's deliberations or the effect of anything upon a juror's mind or emotion as influencing his or her vote except that a juror may testify on the question of whether any extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror.

If it is shown that one or more jurors has been exposed to extraneous prejudicial information or improper influence, there arises a rebuttable presumption of prejudice, and the burden then shifts to the prosecution to explain the conduct or to demonstrate the harmlessness of it. See Blackwell, 664 S.W.2d at 689; State v. Young, 866 S.W.2d 194, 196 (Tenn. Crim. App., 1992). In order to shift the burden to the prosecution to demonstrate the harmlessness of the communication with the jury, the threshold question is whether the statement communicated to the jury was prejudicial to the Defendant. In the present case, there is no evidence that a communication actually occurred. Without evidence of a communication, there can be no evidence that the communication prejudiced the Defendant. We cannot say that the trial court erred in denying the Defendant's Motion for New Trial. This issue is without merit.

## CONCLUSION

For the foregoing reasons, we find that the trial court's error in allowing statements made to the victim's mother by the victim into evidence was harmless, the trial court properly instructed the jury regarding reasonable doubt, the State properly elected the offense that occurred on January 22, 1997, the evidence is sufficient to support the verdict, and the trial court did not err in denying the Defendant's Motion for New Trial. Accordingly, the judgment of the trial court is AFFIRMED.

_____
DAVID H. WELLES, JUDGE