IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 14, 2001

## STATE OF TENNESSEE v. STEPHEN LESTER THOMAS

**Appeal from the Circuit Court for Williamson County**
**No. I-25-198    Donald P. Harris, Judge**

---

**No. M2000-02440-CCA-R3-CD - Filed March 22, 2001**

---

The defendant was charged in the Williamson County Circuit Court with DUI, first offense, after a police officer observed him operating his vehicle in an erratic fashion. A videotape was made and admitted into evidence of the defendant's taking field sobriety tests, upon which the officer testified that he did poorly. Following his conviction for this offense, the defendant timely appealed. In his appeal, he raised several issues, including the refusal of the trial court to instruct as to a lesser-included offense, complaints about the admission of evidence, the conduct of the trial, and rulings of the trial court. Based upon our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and JOSEPH M. TIPTON, J., joined.

Lee Ofman, Franklin, Tennessee, for the appellant, Stephen Lester Thomas.

Paul G. Summers, Attorney General and Reporter; Patricia C. Kussmann, Assistant Attorney General; Ronald L. Davis, District Attorney General; and Lee E. Dryer, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The defendant was convicted in the Williamson County Circuit Court of driving under the influence of an intoxicant, first offense, and was sentenced to confinement for eleven months and twenty-nine days, with all but forty-eight hours suspended, and eleven months, twenty-nine days supervised probation. Additionally, the defendant's driver's license was revoked for one year, and he was ordered to pay a fine of $1,100 and to attend alcohol safety school. The defendant filed a timely appeal, presenting the following issues:

> I.   Whether the court erred in allowing the prosecutor to play that
>      portion of a videotape of defendant's arrest which included the

Horizontal Gaze Nystagmus ("HGN") field sobriety test which had previously been ordered excluded pretrial, as a result of defendant's amended motion in limine.

II.  Whether the court erred in refusing to charge defendant's special jury instruction on Tenn. Code Ann. § 55-10-418(a) as a lesser-included offense of DUI.

III. Whether the trial court erred in allowing the prosecutor to qualify the arresting officer as an emergency medical technician ("EMT").

IV.  Whether the court erred in allowing the prosecutor to ask defense witness, Milton Johnson, whether or not the defendant's wife was intoxicated.

V.   Whether the court erred in allowing the prosecutor to argue, in closing, that defendant's wife did not testify at trial because she was too intoxicated on the night of defendant's arrest.

VI.  Whether the prosecutor's conduct during the trial was so unprofessional and unethical as to require a reversal.

Based upon our review of the record and applicable authorities, we affirm the conviction and sentence.

## FACTS

On October 25, 1997, shortly after midnight, the defendant's vehicle was stopped by Officer John Maxwell after he had observed the car swerve to the right side of the road, swerve to the left, crossing the centerline, and then swerve back to the right. During the time that Maxwell followed the vehicle, it crossed the centerline four times.

Officer Maxwell turned on his blue lights, which activated the patrol car's video camera, and stopped the vehicle. He approached the car on the driver's side and spoke with the driver, the defendant, asking the defendant for his driver's license and vehicle registration. Noticing an odor of an intoxicant about the defendant, Maxwell asked him to step out of the car, and observed that the defendant supported himself on the vehicle as he did so.

As Maxwell and the defendant were standing in front of the officer's car, the defendant was asked to perform field sobriety tests. He was first instructed to recite the alphabet, which he was unable to do correctly despite two attempts. He was then asked to take nine steps forward heel-to-toe, turn around, and take nine steps back. The videotape of this attempt shows that he took nine

steps forward and then nine steps backward, rather than turning around as he had been instructed. He slumped to his left as he had nearly returned to the starting point. On his second attempt, he turned around after taking nine steps forward. However, he did not walk heel-to-toe on either of the tests. The defendant was next instructed to stand on one foot and count from 1,001 to 1,030. The videotape, as well as Maxwell's testimony, showed that the defendant had difficulty in standing on one foot, and after counting upward from 1,001, as instructed, he jumped from 1,010 to 1,030, skipping all of the numbers in between. At that point, he was advised that he was being arrested for driving under the influence.

Robert Milton Johnson, a friend of the defendant, testified as the first witness for the defense. He said that he and his wife had met the defendant and the defendant's wife about 7:00 p.m., the night before the defendant's arrest, at the Richland Country Club. The defendant had two drinks before dinner and one after dinner, which consisted of four or five courses. He did not remember the defendant's drinking wine during dinner. After dinner, about 10:00 p.m., the two couples went to Johnson's house, where the defendant did not have anything else to drink. Neither the defendant nor his wife seemed to be intoxicated as they left Johnson's house, and the defendant seemed normal as he left.

Teresa Farmer, an employee at the Richland Country Club, testified that she had served the defendant one drink of Jack Daniels on the rocks the night before his arrest. She did not believe that the defendant was intoxicated that night. She testified during cross-examination that the Richland members owned the club, and agreed that, for that reason, she worked for the defendant.

Ashley Wiltshire, a legal aid attorney and friend of the defendant for twenty-five years, testified that he had been called by the defendant's wife in the early morning hours when the defendant was arrested to go to the Williamson County Hospital, where the defendant was being treated. The defendant did not seem to be intoxicated, although he was coughing badly. Wiltshire posted bail for the defendant. On cross-examination, he said that he had not been acting as the defendant's attorney that night and was not competent to advise the defendant whether to submit to the blood alcohol test.

The defendant testified that he had three drinks of Jack Daniels on the rocks and one glass of wine at the Richland Country Club the night before his arrest. He also testified that he remembered while at the club that he did not have his asthma medicine with him and had started experiencing tightness in his chest about 9:00 p.m. The defendant testified that he did not know why his car had been pulled over and said that he did not tell the officer about his asthma during the field sobriety tests because he was thinking about what he was doing and wanted to get home to take his medication. As for the alphabet test, the defendant said that he was anxious and having a hard time catching his breath. He said that while doing the one leg stand test, he did not count past 1,010 because he had high arches which affected his balance. The defendant testified that the implied consent form had not been read to him and that he had not said that he wanted an attorney before he signed the form. He testified on cross-examination that he had been capable of driving the night that he had been arrested, although he was having problems because of his asthma. He said that his wife

was not intoxicated. He testified that he had not been asked to take a blood test and did not ask for a lawyer.

Dr. Howard Taylor, a forensic toxicologist, attempted to extrapolate what the defendant's blood alcohol reading would have been, based upon the defendant's proof as to the alcohol which he had consumed prior to his arrest. Following an objection by the State as to a lack of foundation for this testimony, the defense recalled Teresa Farmer to provide additional information as to the drinks served to the defendant. She said that each drink with Jack Daniels contained one and one-half ounces of 86% proof Jack Daniels and that the wine had been served in nine-ounce glasses. Based upon this testimony, Dr. Taylor then testified that, considering the defendant's statements as to the manner in which the drinks had been consumed, as well as his size, the defendant's blood alcohol reading at 12:20 a.m. the morning of his arrest wold have been 0.047. He said that he had viewed the videotape of the defendant's arrest and could not say that he was impaired, although he could neither say that the defendant could safely drive.

Officer Maxwell was called as a rebuttal witness and testified that the defendant's wife had been too intoxicated to recite the alphabet, both skipping and mixing up letters. He called a cab to take her home after he had arrested the defendant. He said that while at the hospital a physician had asked to draw a sample of blood from the defendant, but the defendant refused.

## ANALYSIS

### I. Showing of Videotape Which Included HGN Test

Prior to the trial, the defendant had filed a motion in limine, as well as an amended motion in limine, asking that the videotape showing the stop of the defendant's vehicle and his performance on the field sobriety tests be edited so as to remove that portion showing the Horizontal Gaze Nystagmus ("HGN") test. Although the trial court granted these motions, the arrest tape, as shown to the jury, included the portion showing the HGN test being administered. No contemporaneous objection or motion for a mistrial was made by the defendant to this tape as it was shown to the jury. The defendant has assigned as error the showing of the tape which included this portion, asserting his rights to due process and to a fair trial were violated. The State responds that this issue was waived in the trial court because there was no contemporaneous objection. Even if the assignment is evaluated on its merits, according to the State, it is without basis because the jury's perspective of the test was from the defendant's back, and Officer Maxwell neither made comments on the tape as to the defendant's performance on the HGN test nor testified about it during the trial.

The State has accurately described the officer's administering the HGN test. Accordingly, this assignment is without merit.

## II. Refusal to Instruct as to Driving While Impaired

The defendant has also assigned as error the refusal of the trial court to instruct the jury as to the lesser-included offense of driving while impaired. Tenn. Code Ann. § 55-10-418. Although the defendant requested an instruction as to driving while impaired, the trial court declined to give this instruction.

In State v. Burns, 6 S.W.3d 453, 467 n.12 (Tenn. 1999) (citing Tenn. Code Ann. § 55-10-415(c) (1998)), our supreme court, setting out examples of lesser-included offenses, observed that "the offense of underage driving while impaired is a lesser-included offense of driving while intoxicated." As set out in the defendant's brief, this court has held, in State v. James Russell Neill, Jr., No. 02C01-9503-CC-00067, 1996 WL 102349, at *3 (Tenn. Crim. App. Mar. 6, 1996), that underage driving while impaired is a lesser-included offense of driving under the influence. However, in arguing that the trial court erred in not instructing as to adult driving while impaired, Tenn. Code Ann. § 55-10-418(a), as a lesser-included offense of driving under the influence, Tenn. Code Ann. § 55-10-401, the defendant overlooks the fact that the adult driving while impaired statute was not enacted until 1998, with an effective date of July 1, 1998. 1998 Tenn. Pub. Acts 1046, § 4. The defendant was charged with an offense occurring on October 25, 1997. Thus, the conduct proscribed by the adult driving while impaired statute was not a criminal offense at the time of the defendant's arrest. Had the trial court instructed as to driving while impaired, and the defendant been convicted of this offense, we would have made an *ex post facto* analysis of the matter. Miller v. State, 584 S.W.2d 758, 761 (Tenn. 1979). The defendant was not entitled to an instruction as to driving while impaired because the statute proscribing it had not been enacted at the time of the incident which resulted in the defendant's arrest.

This assignment is without merit.

## III. Attempt to Qualify Officer Maxwell as an Expert to Testify Regarding Asthma

During direct examination, Officer Maxwell testified as to his training as an emergency medical technician ("EMT"). He then was asked by the prosecutor whether, in his opinion, the defendant was faking his asthma attack. Defense counsel objected, asserting that a proper foundation had not been made for the witness to answer the question, and the trial court sustained the objection. The defendant now objects that "[t]he jury was made aware that the officer believed that the Appellant was faking an asthma attack." This is speculation. This question is certainly not of the type that the mere asking of it violated the defendant's right to due process, as he has alleged. The trial court has substantial discretion as to whether a witness has qualified an expert, and there can be no reversal on appeal absent an abuse of that discretion. State v. Ballard, 855 S.W.2d 557, 562 (Tenn. 1993). Here, we cannot conclude that the trial court abused its discretion in considering Officer Maxwell as an expert EMT. Additionally, we note that the complaint in this regard is not that Maxwell was allowed to opine on a subject for which he was not qualified, but, rather, that the error occurred by the State's asking a question which the witness was not allowed to answer. Given Officer Maxwell's training and experience, we cannot conclude that this question was clearly

improper or that the asking of the question resulted in the defendant's not receiving a fair trial. The authority cited by the defendant, <u>Capps v. State</u>, 523 S.W.2d 213 (Tenn. Crim. App. 1975), is not supportive of his position.

This assignment is without merit.

#### IV. Question of Defense Witness as to Whether Defendant's Wife Was Intoxicated

Robert Milton Johnson, a defense witness who testified that he and his wife had dinner with the defendant and the defendant's wife and that they all then went to the Johnsons' residence, was asked on cross-examination whether the defendant's wife was intoxicated. Over the objection of the defendant, Johnson testified that, in his opinion, she was not. The defendant argues that this question and answer were irrelevant, that it was the State's way of proving "guilt by association," and that "[w]hen taken as a whole, the objectionable question more than likely planted the seed of Appellant's guilt in the jury's mind by attempting to prove his wife's intoxication." This is speculation. "The propriety, scope, manner and control of the cross-examination of witnesses, however, rests within the sound discretion of the trial court." <u>State v. Dishman</u>, 915 S.W.2d 458, 463 (Tenn. Crim. App. 1995) (citations omitted). Absent a clear showing that the discretion was abused, a trial court's ruling on evidentiary matters will not be disturbed. <u>State v. Cauthern</u>, 967 S.W.2d 726, 743 (Tenn.), <u>cert</u>. <u>denied</u>, 525 U.S. 967, 119 S. Ct. 414, 142 L. Ed. 2d 336 (1998). Given this witness's testimony during direct examination, we cannot conclude that the trial court erred in allowing the question.

This assignment is without merit.

#### V. Evidence of Intoxication of Defendant's Wife

The defendant argues that the prosecutor improperly asserted during final argument that Officer Maxwell had testified that the defendant's wife was intoxicated at the time of the defendant's arrest. In making this claim, the defendant relies upon a court order, entered on April 21, 1998, which states in full as follows:

> This Court, having heard evidence from both defendant, through counsel, Lee Ofman, and the State, through Assistant District Attorney Lee Dryer, upon Defendant's Motion *In Limine* to edit certain portions of a video film taken of Mr. Thomas' arrest by the Brentwood Police Department on October 25, 1997, hereby ORDERS that the portion of the video tape depicting other stops by the Brentwood Police Department shall not be shown to the jury and that portion of the video film which shows conversations between the arresting police officer and the Defendant's wife, shall not be shown to the jury except motion is first made outside the presence of the jury.

When the videotape of the arrest was shown during the trial, the jury did not see that portion showing Officer Maxwell talking with the defendant's wife. During his direct examination, as a State's witness, Officer Maxwell had responded to a general question from the prosecutor as to what the officer had done after arresting the defendant by stating he had determined that the passenger was too impaired to drive. The defense then asked that the jury be excused and told the trial court that the understanding was that the State had not intended to present this evidence. The prosecutor told the court that he had not intended to do so and that he would move on in his questioning of Officer Maxwell. After the defense had rested its case, the State, over the objection of the defense, recalled Officer Maxwell, who testified that the defendant's wife had been intoxicated at the time of the arrest. He said that her speech was slurred, that there was an odor of intoxicant about her, and that she could not recite the alphabet. He had her taken home in a cab because she was not able, in his opinion, to operate a motor vehicle. Accordingly, there was evidence before the jury of the intoxication of the defendant's wife, although defense witnesses had testified that she was not intoxicated.

The defendant also complains that the prosecutor violated the "missing witness rule," by arguing the defendant's wife had not testified without his first establishing the required foundation. Specifically, the defendant claims that the evidence at trial did not establish that the defendant's wife was available for service of process. We agree that Delk v. State, 590 S.W.2d 435, 440 (Tenn. 1979), requires a showing that the missing witness is, in fact, subject to process before the assertion can be made. Thus, the proper foundation not having been established, it was error for the prosecution to make this argument. However, since no contemporaneous objection was made, the error is waived. Even if an objection had been made, however, we would conclude that reversible error did not result from this argument.

The proper method for making a missing witness argument or requesting such an instruction is explained in Neil P. Cohen, et al., Tennessee Law of Evidence, § 4.01[14][e] (4th ed. 2000) (quoting State v. Francis, 669 S.W.2d 85, 90 (Tenn. 1984)). The lawyer should:

> inform the court at the earliest opportunity so that an evidentiary hearing, if necessary, can be held to establish whether the requirements for laying a proper foundation . . . have been met. An advance ruling from the trial court on the permissibility of arguing before a jury the adverse inference to be drawn from the absence of a witness, will ultimately save judicial time and the expense of a retrial.

In a recent application of the rule, this court concluded, in State v. Hodge, 989 S.W.2d 717, 722-23 (Tenn. Crim. App. 1998), that a prompt curative instruction neither addressed the central problem with the State's reminding the jury, during its second argument, that the defendant had not called his wife to testify nor stopped the State's continuing references to the fact that she had not testified.

In the instant appeal, we note that the prosecutor, also in his second argument, reminded the jury that of the three people at the scene who knew whether the defendant was intoxicated, only two had testified, the defendant and Officer Maxwell. No objection was made by the defense to this statement, which was made in passing and not elaborated upon during the lengthy argument. We note that, in the defense argument, a similar claim had been made that the prosecution could have issued subpoenas for personnel at the Williamson County Hospital; the Franklin Fire Department; paramedics at the scene, one of whom was said to be a physician; other personnel at the Richland Country Club; and the other police officer shown on the arrest videotape, all of these persons presumably having some knowledge of the matter. The prosecutor did not object to this argument although no foundation had first been made in accord with Delk v. State, 590 S.W.2d 435, 440 (Tenn. 1979). Thus, with regard to the missing witness argument, the situation appears to be that both sides made such an argument, the prosecution's coming after the defendant had made the argument. In view of the videotape showing the defendant's difficulty in performing the field sobriety tests, we feel certain that the State's defective foundation for the missing witness argument did not affect the verdict, especially when the content and context of the argument is closely scrutinized.

This assignment is without merit.

## VI. Complaints as to Prosecutor's Trial Conduct

The defendant's final issue is that "the prosecutor behaved in such an unprofessional and unethical manner so as to require a reversal." His brief then sets out a number of instances of alleged misconduct, most of which occurred during closing argument.

This court recently discussed, in State v. Thornton, 10 S.W.3d 229, 234-35 (Tenn. Crim. App. 1999), perm. to appeal denied (Tenn. 2000), the limits upon a prosecutor's final argument:

> In general, closing argument is subject to the trial court's discretion. Counsel for both the prosecution and the defense should be permitted wide latitude in arguing their cases to the jury. *State v. Bigbee*, 885 S.W.2d 797, 809 (Tenn. 1994). Arguments must be temperate, predicated on evidence introduced during the trial, relevant to the issues being tried, and not otherwise improper under the facts or law. *State v. Middlebrooks*, 995 S.W.2d 550 (Tenn. 1999).

In assessing whether alleged misconduct constitutes reversible error, the court must determine whether the conduct had a prejudicial effect upon the verdict, in light of the following factors:

> (1) the conduct complained of viewed in context and in light of the facts and circumstances of the case;

(2)  the curative measures undertaken by the Court and the prosecution;

(3)  the intent of the prosecutor in making the improper statement;

(4)  the cumulative effect of the improper conduct and any other errors in the record; and

(5)  the relative strength or weakness of the case.

State v. Buck, 670 S.W.2d 600, 609 (Tenn. 1984) (quoting Judge v. State, 539 S.W.2d 340, 344 (Tenn. Crim. App. 1976).

Utilizing these standards, we will consider the defendant's claims as to improper conduct by the prosecutor.

### A.  Claim that Defense Counsel Had Attacked Prosecutor

The defendant objects to the prosecutor's statement that defense counsel had attacked him personally to draw attention away from the weak case of the defendant.  Actually, what the prosecutor did was make the time-worn argument that a defendant who had no defense would mask that fact by attacking the police and the prosecutor.  No contemporaneous objection was made to this comment; and, accordingly, the issue is waived.  Tenn. R. App. P. 36(a).  This claim was made in passing, without elaboration and for the apparent purpose of arguing that the defense was weak.  As such, the argument does not entitle the defendant to relief.

### B.  Argument That the Defense Expert Witness Was Only Recently Retained

The prosecutor reminded the jury that the defense expert witness, Dr. Howard Taylor, was only recently retained and questioned what that said about how many experts the defendant had spoken with to obtain favorable testimony.  The defense immediately objected to this argument, and the trial court sustained the objection, promptly instructing the jury that they should disregard the last statement of the prosecutor.  On appeal, the State concedes that this argument was "intemperate," and we agree that it was unquestionably improper.  However, taking the statement in context and given the prompt curative instruction from the trial court that the statement should be disregarded, we cannot say that the defendant was prejudiced by the statement.

### C.  Argument Regarding Defense Witness Ashley Wiltshire

During cross-examination, the prosecutor questioned Wiltshire as to whether he was acting as a lawyer or a friend when he visited the defendant at the hospital and whether he was being truthful when he testified that he did not know whether a person suspected of driving under the influence should submit to a Breathalyzer test.  We note that the trial court instructed the jury as to

the credibility of witnesses. The record shows a spirited cross-examination of this witness which was well within the bounds of propriety.

### D. "Hand-Picked" Defense Witnesses

The prosecutor argued that the defense had "hand-picked" its witnesses to create a story. This argument was not objected to; therefore, any issue regarding it is waived. However, even if we considered this claim on its merits, the defendant would not be entitled to relief. It simply does not follow, as the defendant argues in his brief, that because witnesses are handpicked, their testimony is perjured and the defendant is dishonest. Rather, handpicked witnesses could be expected to give testimony favorable to the party calling them.

### E. Reference to the State's "Budget Crunch"

Responding to the defense comment about the State's having unlimited resources but not having presented expert testimony during the trial, the prosecutor responded that the State was in a "budget crunch" and suggested that taxes would be raised if the State brought in expert witnesses, especially to tell the jury what they had just seen and heard. The defense immediately objected to the argument. However, it is unclear from the videotape record of the trial how the trial court ruled on the objection. It does not appear that the trial court gave a curative instruction regarding this clearly improper argument. However, we note that the prosecutor immediately went to a different argument following the objection. Given the context, we cannot conclude that this argument affected the verdict.

### F. Argument that Defendant Was Co-Owner of Country Club

During his final argument, in explaining why he had not tried to interview potential witnesses at the Richland Country Club prior to the trial, the prosecutor argued that the defendant was a part-owner of the club and the witnesses would not have talked with the prosecutor. In his brief, the defendant claimed, as to this statement of ownership, that it was irrelevant, improper, and an attack upon the defendant and one of his witnesses. We note that no objection was made during the trial to this argument. Accordingly, any objection to it is waived. However, even if we consider it on its merits, the defendant would not be entitled to relief. First, it is arguable that the defendant was, in fact, a part-owner of the club, the jury having heard testimony that each member owned a "share." Accordingly, this argument could be viewed as appropriate, given the subsequent instruction on witness credibility that the jury was to consider "whether the witness [had] any bias, prejudice, or personal interest in how the case is decided."

### G. Arguments as to Effect of Not Guilty Verdict

The prosecutor made several related arguments as to the defendant's financial resources and the effect of a verdict of not guilty. He argued that a verdict of not guilty would create a class of people who could say that a police officer was not telling the truth, give a reason for not taking the

Breathalyzer test, and drink and drive with impunity so long as they could hire lawyers and experts. It is clear that this and related arguments were improper. However, since they were not objected to, any error is waived. Even if we consider them on their merits, they would not entitle the defendant to relief, given the context in which they were made, the strength of the prosecution's case, and the trial court's later instructions that statements, arguments, and remarks of counsel are not evidence and are to be disregarded if not supported by the evidence. See State v. Nesbit, 978 S.W.2d 872, 895 (Tenn. 1998), cert. denied, 526 U.S. 1052, 119 S. Ct. 1359, 143 L. Ed. 2d 520 (1999).

## CONCLUSION

Based upon our review, the judgment of the trial court is affirmed.


_____
ALAN E. GLENN, JUDGE