# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
May 15, 2001 Session

## STATE OF TENNESSEE v. CLEANDER CLEON HARTMAN, JR.

**Direct Appeal from the Circuit Court for Williamson County**
**No. II-599-154      Timothy L. Easter, Judge**

---

**No. M2000-02441-CCA-R3-CD - Filed Janaury 17, 2002**

---

The defendant appeals from his convictions of aggravated sexual battery, sexual battery by an authority figure, and sexual battery. We conclude that the conviction for Count Two of sexual battery by an authority figure must be reversed and dismissed because stepparents as a matter of law are not included in the statute under which the defendant was indicted. Additionally, evidence of uncharged sex crimes was erroneously admitted and inappropriately argued resulting in undue prejudice to the defendant. The cumulative effect of these errors requires a new trial on Count One and Count Three.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Reversed and Dismissed on Count Two and Reversed and Remanded for a New Trial on Counts One and Three**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which JERRY L. SMITH, J., joined. NORMA MCGEE OGLE, J., concurred in results only.

Ernest W. Williams and Dana C. McLendon III, Franklin, Tennessee, for the appellant, Cleander Cleon Hartman, Jr.

Paul G. Summers, Attorney General and Reporter; David H. Findley, Assistant Attorney General; Ronald L. Davis, District Attorney General; and Derek Keith Smith, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

On May 10, 1999, the defendant, Cleander C. Hartman, Jr., was indicted by a Williamson County Grand Jury as follows: Counts One and Three for violations of Tennessee Code Annotated section 39-13-504(a)(4), aggravated sexual battery, Class B felonies; and Count Two for a violation of section 39-13-527, sexual battery by an authority figure, a Class C felony. Count One alleged a violation occurring in 1994, while Count Two alleged violations occurring between 1994 and 1998, both involving victim F.H., whose date of birth is September 23, 1982. Count Three alleged a violation in November of 1998 involving victim S.H., whose date of birth

is July 16, 1986. As alleged in the indictments for aggravated sexual battery, the two victims were both under the age of thirteen (13) when the incidents in Counts One and Three occurred.

A jury tried the defendant in February of 2000. Prior to charging the jury, the trial court granted the defendant's motion for judgment of acquittal on the aggravated sexual battery count under Count One because the state had failed to prove the victim was under the age of thirteen at the time of the offense. The trial court, however, did charge the jury as to Count One on the lessor-included offense of sexual battery, a Class E felony. At the conclusion of the trial, the jury found the defendant guilty of sexual battery of victim F.H. as charged in Count One, guilty of sexual battery by an authority figure of victim F.H. as charged in Count Two, and aggravated sexual battery of victim S.H. as charged in Count Three.

Following a sentencing hearing on May 19, 2000, the trial court sentenced the defendant to two (2) years on the sexual battery conviction (Count One) and to four (4) years on the sexual battery by an authority figure conviction (Count Two) to be served concurrently. The trial court then sentenced the defendant to ten (10) years on the aggravated sexual battery conviction (Count Three), to be served consecutively to Counts One and Two, for an effective fourteen (14) year sentence.

The defendant's motion for new trial was denied and a notice of appeal was timely filed. In this appeal, the defendant asserts: 1) The trial court erred in allowing into evidence letters that the defendant sent to the victims; 2) The trial court erred by allowing the state to reopen its case in chief after the defendant stated the substance of his Rule 29 motion, but prior to the defendant's proof; 3) The defendant was not afforded a unanimous jury verdict; 4) The state's closing argument improperly asserted personal opinion and improperly raised the missing witness rule; and 5) The trial court erred in sentencing the defendant. After review, we reverse the judgment of the trial court and remand for a new trial on Counts One and Three. Count Two is dismissed.

**Facts**

The testimony introduced during the trial revealed the following facts. The defendant married the victim, F.H.'s mother when the victim was two years of age. F.H. was not the biological child of the defendant, but the victim, F.H., believed the defendant to be her biological father until early 1999 when her mother filed for divorce. F.H. is the victim of the alleged offenses in Counts One and Two. In 1986 the defendant and F.H.'s mother had a child together, S.H., who is the victim of the alleged offense in Count Three.

F.H. testified that the first sexual incident with her stepfather occurred when she was sitting at the kitchen table and the defendant came into the kitchen and massaged her neck. The defendant then reached around F.H., placed his hands under her bra and touched her breasts. F.H. could not remember her age at the time of the incident but testified that she was either twelve or thirteen. She remembered that she was twelve or thirteen because that was the time frame during which she owned the bra that she was wearing. The state elected to charge this particular incident as Count One.

F.H. was also the victim of the offense charged in Count Two. As evidence of Count Two, F.H. testified that after the incident alleged in Count One, the defendant entered her bedroom once or twice a week and offered F.H. a back or foot massage. On the occasions that the defendant gave F.H. a massage, F.H. testified that he would occasionally reach around and touch her breasts. F.H. testified that she began sleeping with her arms underneath her so that the defendant could not touch her breasts. On some occasions, the defendant would also make a joke about kissing F.H.'s butt, and would pull her panties down and kiss her buttocks. F.H. could not remember when these incidents began or when they stopped, nor could she remember how many times they occurred. She testified that the defendant may have come into her room two or three times a week and that the incidents occurred "more often at first than at the end." As for the time frame during which the incidents occurred, F.H. testified that they began shortly after the incident alleged in Count One and continued until shortly before the defendant was removed from the household in early 1999. In short, F.H. testified that the defendant came into her room and fondled her breasts up to three times a week beginning in 1994 or 1995 and continuing until late 1998, which amounts to as many as seven hundred and eighty times (780). After the state rested its case, the trial court allowed the state to recall F.H. to testify a second time. At this time, the state first asked if F.H. could remember whether she was twelve or thirteen when the incident alleged in Count One occurred. F.H. responded that she could not be sure. Then the state asked if the incidents alleged in Count Two occurred in the year 1998. F.H. responded that the defendant probably entered her bedroom and gave her a massage twice a week in 1998. F.H. further testified that approximately twenty-five (25) percent of the time, the defendant tried to touch her breasts. When asked to clarify if the defendant tried to touch her breasts or actually touched her breasts, F.H. responded that the defendant actually touched her breasts and/or kissed her buttocks twenty-five (25) percent of the time. Using simple math, the unlawful touching would have occurred twenty-six (26) times in 1998. The state's election for Count Two narrowed the offense to when the defendant entered F.H.'s bedroom in 1998 and touched her breasts or some twenty-six (26) times.

In addition to the incident in Count One and the incidents described above, F.H. testified about other instances of inappropriate conduct by the defendant. F.H. testified that on one occasion the defendant approached her while she was sunbathing and reached for her bathing suit bottom in an attempt to pull it down. The defendant told F.H. that he wanted to see if she shaved like the girls in the magazines. F.H. testified that the defendant did not actually touch her on this occasion. F.H. also testified to an occasion when she and the defendant were in the defendant's truck in the driveway of their home and the defendant forced her to give him a kiss on the mouth before he would take her wherever they were going. F.H. also testified that she did not like to shop with the defendant because he always wanted to buy her bras and panties and that the defendant would sometimes make inappropriate comments about her cleavage. Additionally, when asked by the state about any other "off-color sexual comments" by the defendant, F.H. responded that the defendant did not like "n*gg*rs" and disapproved of interracial dating relationships. Further prompting by the state led to more race-related remarks until an objection was sustained preventing further inquiry about the matter.

S.H., the defendant's youngest daughter, testified that the defendant had touched her on one occasion in November of 1998, when she was twelve years old.  S.H. testified that she was standing in the hallway outside the bathroom of the family home before bedtime.  S.H. was wearing a long tee shirt and panties.  The defendant came up and hugged her from behind, placed his hands underneath her shirt and ran them from her breasts to her vaginal area.  Later that same night the defendant came into S.H.'s room and told her that he knew his actions were wrong and that he was sorry.  S.H. later told her sister, F.H., about the incident.  F.H. stated that she was going to tell their mother about the incident.

In early January of 1999, F.H. became angry with the defendant during an argument and told him in the presence of her mother that F.H. was tired of being touched and that she knew that the defendant had tried to touch S.H..  In response to F.H.'s allegations, the defendant apologized for anything he did or said that offended F.H.  Thereafter, the victims' mother filed for divorce and had the defendant removed from the home.   In the week following the defendant's removal from the home, he wrote several letters to his wife, F.H., and S.H., which were admitted as evidence and read to the jury.

## Analysis

The defendant raises five issues in this appeal:  1) The trial court erred in admitting letters that the defendant sent to the victims; 2) The trial court erred by allowing the State to reopen its case in chief after the defendant stated the substance of his Rule 29 motion, but prior to the defendant's proof; 3) The defendant was not afforded a unanimous jury verdict; 4) The state's closing argument improperly asserted personal opinion and improperly raised the missing witness rule;  and 5) The trial court erred in sentencing the defendant.

### A.  Admissibility of Letters

In his first issue, the defendant challenges the introduction of three letters written in his handwriting.  One letter was addressed to his oldest stepdaughter, F.H.; one to his youngest daughter, S.H.; and one to his estranged wife.  All three letters were written and delivered in early 1999, shortly after the defendant was removed from the family home.   Each addressee testified at trial and read to the jury the letter addressed to them in its entirety.  The defendant challenges the admissibility of the letters on the grounds that the probative value of the letters is substantially outweighed by the prejudicial effect.   The defendant asserts that the letters are "ambiguous, immaterial, and irrelevant, at least in part. . . ."

Tennessee Rule of Evidence 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Evidence that is not relevant is inadmissible. Tenn. R. Evid. 402. "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." Tenn. R. Evid. 403. The trial court has the discretion to admit or exclude evidence under this balancing test, and its determination will not be overturned absent an abuse of that discretion. State v.

Campbell, 904 S.W.2d 608, 616 (Tenn. Crim. App. 1995); State v. Baker, 785 S.W.2d 132, 134 (Tenn. Crim. App. 1989).

Our review of the record reveals that the defendant has not provided a record of the trial court's denial of his motion in limine requesting that the letters be excluded because of their prejudicial effect. It is the defendant's obligation to prepare an adequate record in order to allow meaningful review on appeal. Tenn. R. App. P. 24(b); State v. Bunch, 646 S.W.2d 158, 160 (Tenn. 1983); State v. Roberts, 755 S.W.2d 833, 836 (Tenn. Crim. App. 1988). An appellate court cannot consider an issue that is not preserved in the record for review. Bunch, 646 S.W.2d at 160. We must, therefore, presume that the trial court's action in admitting the letters into evidence was proper. State v. Oody, 823 S.W.2d 554, 559 (Tenn. Crim. App. 1991).

### B. Reopening of State's Case

The defendant contends that the trial court erred in allowing the state to reopen its proof by recalling F.H. as a witness after the defense stated the substance of its motion for judgment of acquittal. We disagree. Whether to allow the reopening of proof is within the discretion of the trial court whose decision will not be overturned unless there is a showing that an injustice has been done. State v. Brock, 940 S.W.2d 577, 580 (Tenn. Crim. App. 1996).

In the instant case there has been no showing of an abuse of discretion or prejudice to the defendant. The defense had not put on any proof or made its motion for judgment of acquittal. Our review of the record indicates that the defendant had merely stated his intention to make a motion for judgment of acquittal based on the state's failure to establish F.H.'s age for the offense of aggravated sexual battery charged in Count One. Although the state's purpose in recalling F.H. was to try once again to establish her age at the time of the offense charged in Count One, the trial court later granted the defense's motion for judgment of acquittal on Count One. Thus, the defendant was not prejudiced by the state's opportunity to reexamine F.H.

It is well settled that absent an injustice, a trial court's decision to permit the introduction of further evidence after a party has rested must be upheld. This Court upheld a trial court's order granting the state's motion to reopen so that the prosecution could prove that the defendant was in possession of an automobile involved in a burglary. State v. Tuttle, 914 S.W.2d 926, 930 (Tenn. Crim. App. 1995). We have also found that it was reversible error for a trial court to refuse to reopen the proof and allow the defendant to present the testimony of a newly found witness that tended to impeach one of the state's most important witnesses. State v. John Michael Armitage, No. 1241, 1990 Tenn. Crim. App. LEXIS 447, at *7, (Tenn. Crim. App., at Knoxville, July 10, 1990). After a thorough review of the record, we find no prejudice in the instance case. As such, we find that the trial court did not abuse its discretion in permitting the state to reopen its case after the defendant had stated the substance of its motion for a judgment of acquittal.

### C. Unanimity of Jury Verdict

The defendant challenges the unanimity of the jury verdict for Count Two for two reasons. First, the defendant alleges that the verdict for Count Two was based in part on

evidence, impermissibly presented to the jury, of uncharged sex crimes committed by the defendant against F.H.. Second, the defendant alleges that the state's election for Count Two is constitutionally infirm because it only narrows the offense to the year 1998, which encompasses twenty-six (26) different unlawful touchings. We will address each of the defendant's arguments separately. In addition, the defendant's arguments raise another issue that has been ignored by the parties, both at trial and in their briefs on appeal, which we find necessary to address under the plain error analysis.

Our review of the legislative history of Tennessee Code Annotated section 39-13-527, the crime charged in Count Two, uncovered an error not raised by the defendant in this appeal, which we will address as plain error. This court may consider plain error upon the record. State v. Ogle, 666 S.W.2d 58 (Tenn. 1984). Before an error may be so recognized pursuant to Rule 52(b) of the Tennessee Rules of Criminal Procedure, the error must be "plain" and it must affect a "substantial right" of the accused. The word "plain" is synonymous with "clear" or equivalently "obvious." United States v. Olano, 507 U.S. 725, 732 (1993). In the instant case, as we will address below, the error is plain on the face of the indictment. In addition, it affects a substantial right of the defendant, to wit: he has been charged with and convicted of a crime, which is inapplicable to him as stated in the indictment and jury charge.

The crime of sexual battery by an authority figure first became effective in 1997 and was modified effective May 18, 1998. The indictment and jury charge for Count Two,[1] contains the language used in the 1997 version of the statute. However, a review of the legislative history reveals that the 1997 statute did not include stepparents in the definition of authority figure. The 1998 amendment to the statute added stepparents in sub-part (b). The statute as amended provides:

    (a) Sexual battery by an authority figure is unlawful contact with a victim by the defendant or the defendant by the victim accompanied by the following circumstances:

    (1) the victim was, at the time of the offense, thirteen (13) years of age or older but less than eighteen (18) years of age; and either

        (A) The defendant had, at the time of the offense, supervisory or disciplinary power over the victim by virtue of the defendant's legal, professional, or occupational status and used such power to accomplish the sexual contact; or

        (B) <u>The defendant had, at the time of the offense, parental or custodial authority over the victim and used such authority to accomplish the sexual contact.</u>

---

[1] The indictment and jury charge for Count Two stated that the defendant:

    unlawfully, intentionally, and feloniously, engaged in unlawful sexual contact with a female child, . . . who was at the time of the offense was [sic] thirteen (13) years of age or older but less than eighteen (18) years of age and when [the defendant] had at the time of the offense, supervisory or disciplinary power of the said child by virtue of the defendant's legal, professional or occupational status and used such power to accomplish the sexual contact, in violation of Tennessee Code Annotated, Section 39-13-527.

Tenn. Code Ann. § 39-13-527 (1998)(emphasis added).

The record clearly establishes that the defendant was the stepfather of F.H., the alleged victim in Count Two, and that he used his authority as her stepfather to accomplish the sexual act. Stepparents were not, however, contemplated in the language of the 1997 statute, used in the indictment for Count Two. The following quote from one of the senators during the senate debate on the 1998 amendment is illustrative of the fact that stepparents were not included in the 1997 version of Tennessee Code Annotated section 39-13-527.

> All I know is . . . my district attorney said when they are looking at this, that this <u>does not extend to</u> those perpetrators who have parental or custodial authority such as a non-paid babysitter, <u>a step-parent,</u> extended family, or even biological parents who have never legitimized their child. Those were not included in this section of the code and so at the same time . . . even though we moved in the right direction by finding authority figure, we did not quite go far enough . . . as far as acquiring parental or custodial authority.

Tenn. S. Debate on S3158, April 14, 1998, at 1907 (emphasis added).

Based on our review of the legislative history, the indictment and jury charge which provided that the defendant had authority over the victim by virtue of his "legal, professional or occupational status" did not encompass parental authority. The record clearly establishes that the defendant had parental or custodial authority over the victim as a stepfather and not authority based on his legal, professional, or occupational status. No evidence was presented that the defendant had legally adopted F.H. or otherwise had any legal authority over her at the time the offenses were committed.

We conclude that the indictment and jury charge for the crime of sexual battery by an authority figure in Count Two was improperly applied to this defendant. The defendant could not be charged with conduct, which occurred prior to the amendment of the statute on May 18, 1998, because stepparents were not included in the original version of the statute. Furthermore, the language used in the instant indictment could not be applied to the defendant for conduct which occurred even after May 18, 1998, because the defendant did not have "legal, professional, or occupational' authority over the victim as stated in the indictment and jury charge. Therefore, the conviction on Count Two, sexual battery by an authority figure must be reversed and dismissed.

Uncharged Sex Crimes

Additionally, the defendant challenges the admission of F.H.'s testimony, admitted as evidence of Count Two, describing incidents of sexual misconduct by the defendant occurring prior to 1997. F.H. testified that shortly after the offense charged in Count One occurred, the defendant would come into her bedroom at night and touch or attempt to touch her breasts, or would kiss her buttocks. She testified that this continued until shortly before the defendant was removed from the family home in January 1999. F.H. stated that this conduct occurred more frequently when the defendant first began doing it than when it stopped in 1998. F.H. also

testified to an incident that occurred in 1996 where the defendant tried to pull F.H.'s bathing suit bottom down while she was sunbathing and stated that he wanted to see if F.H. shaved like the girls in the magazines. In this appeal, the defendant asserts that this evidence was improperly admitted as evidence of Count Two because it was evidence of uncharged sex crimes, which is prohibited by Tennessee Rule of Evidence 404(b). See e.g., State v. Rickman, 876 S.W.2d 824, 829 (Tenn. 1994).

We begin by noting that the offense elected by the state as Count One involved one incident of sexual battery of F.H., which occurred at the kitchen table of the family home in 1994 or 1995. All other testimony by F.H. describing sexual misconduct by the defendant was presented as evidence of Count Two. The indictment returned by a Williamson County Grand Jury against the defendant in Count Two for sexual battery by an authority figure stated that the defendant :

> unlawfully, intentionally, and feloniously, engaged in unlawful sexual contact with a female child, . . . who was at the time of the offense was [sic] thirteen (13) years of age or older but less than eighteen (18) years of age and when [the defendant] had at the time of the offense, supervisory or disciplinary power of the said child by virtue of the defendant's legal, professional or occupational status and used such power to accomplish the sexual contact, in violation of Tennessee Code Annotated, Section 39-13-527.

The indictment further stated that defendant committed this offense "between 1994 and 1998." (emphasis added).

The general rule is that evidence of other crimes or wrongs are inadmissible against the defendant. Rule 404 (b) of the Tennessee Rules of Evidence provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait. It may, however, be admissible for other purposes. The conditions, which must be satisfied before allowing such evidence, are:
> (1) The court upon request must hold a hearing outside the jury's presence;
> (2) The court must determine that a material issue exists other than conduct conforming with a character trait and must upon request state on the record the material issue, the ruling, and the reasons for admitting the evidence; and
> (3) The court must exclude the evidence if its probative value is outweighed by the danger of unfair prejudice.

Tenn. R. Evid. 404 (b). The Tennessee Supreme Court has recognized an exception to this rule of exclusion is "where the indictment charges that sex crimes occurred over a span of time." State v. Rickman, 876 S.W.2d 824, 829 (Tenn. 1994). In such an instance, "evidence of unlawful sexual contact between the defendant and the victim allegedly occurring during the time charged in the indictment is admissible." Rickman, 876 S.W.2d at 829. The indictment for Count Two in the instant case includes conduct, which occurred "between 1994 and 1998." However, the crime charged in the instant indictment for Count Two, sexual battery by an authority figure was first created and became effective in July of 1997. Tenn. Code Ann. § 39-13-527 (1997). Therefore, the offense could not have been committed by the defendant prior to that time and the inclusion in the indictment of conduct, which occurred in 1994, 1995, 1996 and

any time in 1997 prior to the effective date for the statute was error. Ordinarily this error standing alone would constitute reversible error. However, the state's attempt to correct the error through submission of a bill of particulars and an election for Count Two was sufficient to avoid dismissal based solely upon the erroneous indictment language.

The record reveals that the state submitted a bill of particulars which narrowed the offense to Spring/Summer of 1997 through 1998 and eventually made an election for Count Two which narrowed the offense to "when the defendant allegedly entered the alleged victim's, [F.H.'s] bedroom in 1998, and allegedly touched her breast." Testimony was presented, however, which described numerous events, purportedly as evidence of Count Two, which could have occurred as early as 1995. We conclude that all of F.H.'s testimony describing sexual misconduct by the defendant that occurred prior to the 1997 enactment of the sexual battery by an authority figure statute was evidence of uncharged sex crimes.

Having determined that F.H.'s testimony (other than that which supports Count One) describing sex offenses which occurred prior to the enactment of sexual battery by an authority figure was evidence of uncharged sex crimes, we must now determine whether such evidence was otherwise admissible. If evidence that the defendant has committed a crime separate and distinct from the one on trial is relevant to some matter actually in issue in the case on trial, and if its probative value as evidence is not outweighed by its prejudicial effect upon the defendant, then such evidence may be properly admitted. State v. Howell, 868 S.W.2d 238, 254 (Tenn. 1993); State v. Zagorski, 701 S.W.2d 808 (Tenn. 1985); State v. Taylor, 669 S.W.2d 694 (Tenn. Crim. App. 1983). The general exceptions to the rule of exclusion are when the evidence is offered to prove the motive, identity, or intent of the defendant, the absence of mistake, opportunity, or a common scheme or plan. Bunch v. State, 605 S.W.2d 227, 229 (Tenn. 1980); see Laird v. State, 565 S.W.2d 38 (Tenn. Crim. App. 1978).

A review of the trial record reveals that the testimony by F.H. concerning incidents of sexual misconduct by the defendant spanning from 1995 to 1998 was admitted as substantive evidence of guilt of the crime charged in Count Two. Thus, we conclude that F.H.'s testimony concerning conduct occurring after July 1, 1997 was properly admitted under the exception created in Rickman as evidence of a charged crime; to-wit sexual battery by an authority figure. However, evidence of conduct occurring prior to July 1, 1997 and not concerning the crime charged in Count One, was improperly admitted. See e.g., Rickman, 876 S.W.2d at 827-830.

There is little doubt that introduction of this evidence as substantive evidence of Count Two prejudiced the defendant. The Tennessee Rules of Evidence provide for exclusion of evidence of other crimes in most situations because of the potential for unfair prejudice to the defendant. Tenn. R. Evid. 404 (b); see e.g., State v. Parton, 694 S.W.2d 299 (Tenn. 1985). Our supreme court has spoken on the dangers of admitting into evidence prior sex-related bad acts in the context of a case involving a child victim and explained that:

> [t]he general rule excluding evidence of other crimes [or acts] is based on the recognition that such evidence easily results in a jury improperly convicting a defendant for his or her bad character or apparent propensity or disposition to commit a crime regardless of the strength of the evidence concerning the offense

on trial. Such a potential particularity exists when the conduct or acts are similar
to the crimes on trial.

Rickman, 876 S.W.2d at 828 (citing Parton, 694 S.W.2d at 303).    In Rickman, our supreme
court concluded that the victim's testimony about other uncharged sex crimes was erroneous and
that the prejudice resulting from the testimony outweighed its probative value. Id. at 830.

The indictment for Count Two included conduct that occurred prior to the 1997
enactment of the crime of sexual battery by an authority figure and testimony describing such
conduct was admitted as evidence of Count Two.  We, therefore, find that the admission of
testimony relating to uncharged sex crimes was a serious error, which prejudiced the defendant,
and, as we will discuss below, was compounded by the prosecutor's use of that evidence in his
closing argument.  Such error would require reversal of the conviction for Count Two, had we
not already concluded that Count Two should be reversed and dismissed.

State's Election for Count Two

The defendant also asserts that the state's election for Count Two, which only narrowed
the offense to 1998, is constitutionally infirm.  We agree.  As we have previously noted, F.H.'s
testimony regarding the sexual misconduct that occurred in 1998 includes approximately twenty-
six (26) incidents.

When the state charges a defendant with one offense, but produces evidence of multiple
offenses, the doctrine of election requires the state to elect the particular offense for which it
seeks a conviction. State v. Brown, 992 S.W.2d 389, 391 (Tenn. 1999). This doctrine enables the
defendant to prepare for a specific charge, protects the defendant against double jeopardy, and,
most importantly, ensures that jurors deliberate over and render a verdict based upon the same
offense. Brown, 992 S.W.2d at 391.  The right to an election is a fundamental constitutional
right. State v. Shelton, 851 S.W.2d 134, 137 (Tenn. 1993).

In the instant case, the victim in Counts One and Two, F.H., testified to multiple offenses
spanning over a five-year period.  Therefore, the state was required to elect the particular offense
on which it was relying for each conviction in such a manner to assure that all the jurors would
be deliberating on the same occurrence.  Additionally, the trial court was required to properly
instruct the jury about the election.

After a review of the record, we conclude that the election for Count Two was
insufficient to ensure that the jury was deliberating on the same occurrence. The jury was
instructed that the state's election for Count Two was "when the defendant allegedly entered the
alleged victim's, [F.H.'s] bedroom in 1998, and allegedly touched her breast."  F.H. testified that
the defendant entered her room once or twice a week in 1998 and touched her breasts or kissed
her buttocks twenty-five (25) percent of the time.  She did not, however, testify as to any one
instance with particularity.  All references to unlawful sexual touching were in general terms.

The state argues that because F.H.'s testimony regarding the defendant's touching of her
breasts was of such a similar quality that "it would have been impossible for one member of the

jury to be contemplating one criminal episode while another jury member contemplated another." The Tennessee Supreme Court has explicitly rejected that theory because there is no way to determine whether the jurors were deliberating on the same occurrence if there is evidence of multiple indistinguishable occurrences. Tidwell v. State, 922 S.W.2d 497, 501 (Tenn. 1996). Although the state urges that the facts in the instant case are distinguishable from Tidwell, this court applied the reasoning of Tidwell to facts similar to the instant case. State v. Herring, No. M1999-00776-CCA-R3-CD, 2000 Tenn. Crim. App. LEXIS 684, at *22 (Tenn. Crim. App., at Nashville August 24, 2000).

In Herring, we found the state's election of offenses insufficient where the victim testified generally that the defendant penetrated her more than ten times in the month of December. Herring, 2000 Tenn. Crim. App. LEXIS 684, at *21-22.. The state elected three counts of child rape in the month of December, reasoning that because the victim testified that it happened more than ten times, there was sufficient proof to cover the three counts alleged to have occurred in December. Id. This court rejected that argument based on the supreme court's holding in Tidwell. Id. at *22. We held that "although the jury obviously believed that the Defendant raped [the victim] on numerous occasions, we cannot condone the 'grab bag' theory of justice rejected by our supreme court. A jury's verdict on a specific offense must be unanimous." Id. at *23.

Tennessee courts have recognized that child victims of sexual abuse are often unable to remember the exact date and time of an offense. Shelton, 851 S.W.2d at 139. In such situations, the state may remedy a victim's inability to recall a specific date by associating the elected incident or incidents with unique surroundings or circumstances, such as meaningful events in the victim's life: "[a]ny description that will identify the prosecuted offense to the jury is sufficient." Id. at 138-39. In the instant case, however, the victim, F.H., testified generally to more than twenty undistinguishable incidents of sexual battery during the period elected as Count Two. Based upon the rulings of the Tennessee Supreme Court and this court's interpretation of such rulings, we conclude that the state's election for Count Two was insufficient to ensure a unanimous jury verdict. Once again, this error would require reversal of the conviction for Count Two had we not already determined that the conviction for Count Two should be reversed and dismissed.

### D. Impropriety of State's Closing Argument

The defendant next complains that the state engaged in improper closing argument, which amounted to prosecutorial misconduct. Specifically, the defendant alleges that the prosecutor improperly argued the missing witness doctrine and repeatedly advanced his personal opinions as to the defendant's guilt. The defendant does not, however, identify which statements he is complaining about other than to point out that the trial court sustained at least three objections to the state's closing argument.

A review of the record reveals that the trial court sustained three objections during the state's closing argument. Because of the defendant's failure to definitively identify any other challenged arguments by the prosecutor, we will only address the impropriety of the prosecutor's

argument in those three instances. We will, however, also address the effect of the prosecutor's arguments concerning the uncharged sex crimes erroneously admitted as evidence of Count Two. The defendant raised this issue in his argument challenging the admission of such evidence.

To prevail on a claim of prosecutorial misconduct, the defendant must show that the argument was so inflammatory or the conduct so improper that it affected the verdict to his detriment. Harrington v. State, 215 Tenn. 338, 385 S.W.2d 758, 759 (Tenn. 1965); State v. Gray, 960 S.W.2d 598, 609 (Tenn. Crim. App. 1997). This court should "consider several factors including the intent of the prosecutor, the curative measures which were undertaken by the court, the improper conduct viewed in context and in light of the facts and circumstances of the case, the cumulative effect of the remarks with any other errors in the record, and the relative strength or weakness of the case." Gray, 960 S.W.2d at 609; Judge v. State, 539 S.W.2d 340, 344 (Tenn. Crim. App. 1976). In addition, we must keep in mind that closing argument is subject to the trial court's discretionary control. State v. Middlebrooks, 995 S.W.2d 550, 557 (Tenn. 1999).

Objections Sustained at Trial

The first objection during the state's closing argument appears to involve what the defendant asserts violated the missing witness doctrine. In his closing, the prosecutor argued that the defense had failed to impeach the testimony of F.H. In support of this position, the prosecutor stated that no witnesses testified that F.H. had lied about or even had a motive to lie about the allegations against her father. The trial court sustained an objection by the defense after the prosecutor went on to state that the defendant's lawyer "is a very good lawyer, if there was any witness that could testify to that, [defendant's lawyer] would have [had them testify.]"

It is well settled that, "[a]s a predicate for comment on a missing witness, the evidence must show that the witness had knowledge of material facts, that a relationship exists between the witness and the party that would naturally incline the witness to favor the party, and that the missing witness was available to the process of the Court for the trial." Delk v. State, 590 S.W.2d 435, 440 (Tenn. 1979). This argument is normally used when the evidence at trial reveals the existence of a material witness who was not called by the defense to testify. If the Delk requirements are met, then the prosecution may comment on the absence of such a witness. State v. Francis, 669 S.W.2d 85, 88 (Tenn. 1984).

In the instant case, the prosecutor did not point to a specific witness that the defense failed to call, as is normally the case. However, the prosecutor did comment on the defense's failure to call a witness to impeach F.H.' s testimony. Additionally, the prerequisites set out in Delk for making such an argument were not satisfied. There was not any evidence presented at trial that such a material witness even existed. The prosecutor's comment as to the defense attorney being a good lawyer who would have called a witness to impeach F.H.'s testimony if such witness existed was clearly outside of the evidence and inappropriate. Furthermore, there seems to be no legitimate reason other than to prejudice the defendant for making the comment. As we previously noted, there was never any evidence at trial regarding any missing witnesses.

-12-

We, therefore, conclude that the prosecutor's comment on the defendant's failure to call a witness to impeach the testimony of F.H. was error.

The second objection made during the prosecutor's closing argument, which was sustained by the trial court occurred when the prosecutor stated that it was sad that the jury would not be able to consider aggravated sexual battery of F.H. as the offense in Count One because the trial court had amended the charge to sexual battery. The prosecutor stated "I submit" that the probable reason F.H. could not recall her age at the time of the offense was because she was abused throughout her teenage years and all of the offenses probably just ran together in her mind. While a prosecutor may not express a personal opinion or belief, comments during argument prefaced by phrases such as "I think" or "I submit" are unlikely to be adjudged opinions. Coker v. State, 911 S.W.2d 357, 368 (Tenn. Crim. App. 1995). Accordingly, we do not believe the comments objected to which contain these phrases were improper statements of opinion. However, we do believe that the statements were improper inasmuch as they referenced erroneously admitted evidence of uncharged sex crimes. We will address the impropriety of the statements in that context below.

The final objection, sustained by the trial court during the state's rebuttal argument, occurred when the prosecutor stated that the defendant had not taken responsibility for what he had done and by not doing so had forced his two daughters to testify about things that were very personal. The record does not reflect why the trial court sustained an objection to this statement. We find that it was not so inflammatory as to affect the verdict to the defendant's detriment.

Uncharged Sex Crimes

The defendant alleges that evidence of uncharged sex crimes was not only erroneously admitted by the trial court, but also was argued strenuously by the prosecution as proof of guilt. We agree. In addition, to the prosecutor's closing argument about F.H. being abused throughout her teenage years, the prosecutor also argued specific testimony by F.H. describing uncharged sexual misconduct by the defendant. Although these arguments concerned evidence presented at trial, it was evidence erroneously admitted. As we discussed above, testimony concerning conduct that occurred prior to the enactment of sexual battery by an authority figure was impermissible evidence of uncharged sex crimes.

In State v. Hodges, we stated that where "the admission of evidence was erroneous, . . . [then] it was [also] error to allow argument regarding [such] evidence." 989 S.W.2d 717, 724 (Tenn. Crim. App. 1998). In Hodges, this court found that the error of admitting testimony concerning uncharged criminal conduct was compounded by the prosecutor using it in his closing argument. Hodges, 989 S.W.2d at 724. Similarly, the error of admitting F.H.'s testimony concerning uncharged sexual misconduct was compounded when the prosecutor used that testimony to argue that F.H. had been abused throughout her teenage years. Although the defendant did not object to the portions of the prosecutor's argument, which specifically recounted F.H.'s testimony concerning uncharged sex crimes, any objection by the defense probably would have been overruled in light of the trial court's erroneous admission of this testimony as evidence of Count Two.

-13-

The only curative measures undertaken by the trial court were to sustain the defendant's objections without comment and to instruct the jury that the arguments of counsel are not evidence according to the pattern jury instruction. A trial court's failure to instruct the jury that it should not consider improper arguments leaves the impression that the arguments are valid considerations for the verdict. Hodges, 989 S.W.2d at 724. Furthermore, in the instant case, evidence of uncharged sex crimes was erroneously admitted as substantive evidence of Count Two and argued to the jury as proof of the defendant's guilt. There is little doubt that the jury had the impression that such evidence was a valid consideration for the verdict. Consequently, the cumulative effect of the erroneously admitted testimony concerning uncharged sex crimes and the argument based on such evidence was substantial.

After applying the factors for determining whether the improper closing arguments warrant a reversal, we find that the conduct complained of in this case may have been less prejudicial if the testimony concerning uncharged sex crimes had not been improperly admitted. Moreover, the trial court did not try to cure this error, or indeed, recognize it to be error. While this error, alone, might not have changed the outcome of the trial, it is the cumulative effect of all the errors that mandates reversal and a new trial. This court has previously held that a trial court's erroneous admission of uncharged sex crimes coupled with the prosecutor's improper argument compels a reversal of all convictions. Hodge, 989 S.W.2d at 722. We are, therefore, of the opinion that the errors in the instant case more probably than not affected the verdict and that the defendant must be afforded a new trial as to all charges against him. Tenn. R. App. P. 36(b).

## E. Enhanced and Consecutive Sentencing

The defendant next alleges that the trial court incorrectly applied enhancement factors, incorrectly found no mitigating factors and incorrectly imposed consecutive sentences. Even though we have reversed defendant's convictions for Counts One and Three and remanded for a new trial, we choose to address the sentencing issue in the event of further review or for guidance on remand, in the event of a conviction following further proceedings.

When there is a challenge to the length or manner of service of a sentence, this court conducts a de novo review with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991); see State v. Jones, 883 S.W.2d 597 (Tenn. 1994). "If the trial court applies inappropriate factors or otherwise fails to follow the 1989 Sentencing Act, the presumption of correctness falls." State v. Shelton, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992).

In conducting a de novo review of a sentence, this court must consider (1) the evidence, if any, received at the trial and sentencing hearing; (2) the pre-sentence report; (3) the principles of sentencing and the arguments of counsel relative to sentencing alternatives; (4) the nature and characteristics of the offense; (5) any mitigating or enhancing factors; (6) any statements made

by the defendant in his own behalf; and (7) the defendant's potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, -210; State v. Smith, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

In the instant case, the defendant was convicted of one count of aggravated sexual battery, a Class B felony; one count of sexual battery by an authority figure, a Class C felony; and one count of sexual battery, a Class E felony. The presumptive sentence for Class B, C, and E convictions is the minimum in the range when no enhancement or mitigating factors are present. Tenn. Code Ann. § 40-35-210 (c). Procedurally, the trial court increases the sentence within the range based upon the presence of any applicable enhancement factors, and then reduces the sentence based upon the presence of applicable mitigating factors. Tenn. Code Ann. § 40-35-210 (d), (e).

The record reflects that the trial court ordered the defendant, a range I offender, to serve the following sentence based upon the application of two enhancement factors and no mitigating factors: two (2) years for the sexual battery conviction, four (4) years for the sexual battery by an authority figure conviction and ten (10 ) years for the aggravated sexual battery conviction. In addition the trial court ordered that the defendant serve the sentence for aggravated sexual battery consecutive to the sentences for sexual battery and sexual battery by an authority figure.

The trial court applied enhancement factors (6) and (15) to enhance the defendant's sentences for the sexual battery and aggravated sexual battery convictions. Only factor (6), however, was used to enhance the defendant's sentence for the sexual battery by an authority figure conviction. Through our de novo review of the record, we find that the trial court properly applied factor (15) but erred by applying factor (6). Enhancement factor (15) is appropriate when the defendant abuses a position of private trust in order to facilitate the crime. Tenn. Code Ann.§ 40-35-114 (15). A position of trust exists when the defendant's formal or informal relationship with the victim "promoted confidence, reliability, or faith." State v. Kissinger, 922 S.W.2d 482, 488 (Tenn. 1996). The trial court found that this enhancement factor could be applied to the convictions for aggravated sexual battery and sexual battery because the defendant used his relationship as the victims' father to facilitate his crimes. We also note that the trial court correctly declined to apply factor (15) to enhance the conviction for sexual battery by an authority figure because it is an element of the offense.

Enhancement factor (6) is applicable when "the personal injuries inflicted upon or the amount of damage to property sustained by or taken from the victim was particularly great." Tenn. Code Ann. § 40-35-114 (6). The record reflects that the trial court applied enhancement factor (6) because of the mental or emotional damage to the victims in this case. The Tennessee Supreme Court, however, has recognized that every sexual battery offense is mentally injurious to the victim. Kissinger, 922 S.W.2d at 487. Therefore, before a court may enhance a sentence based on this factor in a sexual battery case, the state must establish that the emotional injuries and psychological scarring are "particularly great." Id. at 488.

In the instant case, the trial court cited no psychological or medical evidence to support a finding that the victims' emotional injuries were "particularly great." The record reflects that the

trial court was relying on testimony by F.H. and her mother that both victims had suffered from emotional trauma as a result of the crimes. Specifically, F.H. testified that she had nightmares, fear of being alone, and had been in counseling as a result of the crimes. The victims' mother testified that S.H. was closed off and had been ostracized by friends as a result of the crimes but had refused to see a counselor.

Because the state failed to prove that the injuries to the victims were greater than those that ordinarily occur in this type of crime, the trial court improperly applied factor (6) to enhance the defendant's sentence. See, e.g., State v. Hoyt, 928 S.W.2d 935, 948 (Tenn. Crim. App. 1995). The record in the instant case is devoid of any evidence from which the trial court could determine that the mental disturbance shown in the record was greater than, less than, or equivalent to that which is ordinarily involved with these serious offenses. Under such circumstances, the record does not support the trial court's finding that the mental trauma was particularly great and therefore, the application of enhancement factor (6) was in error.

The trial court declined to apply any of the statutory mitigating factors. A review of the record reveals that mitigating factor (1) that the defendant's criminal conduct "neither caused nor threatened serious bodily injury" should have been considered by the trial court. Tenn. Code Ann. § 40-35-113(1). "Serious bodily injury" is defined elsewhere in our criminal code as "bodily injury which involves: (A) A substantial risk of death; (B) Protracted unconsciousness; (C) Extreme physical pain; (D) Protracted or obvious disfigurement; or (E) Protracted loss or substantial impairment of a function of a bodily member, organ or mental faculty." Tenn. Code Ann. § 39-11-106(a)(33). We find that the proof did not establish that the defendant's sexual battery of F.H. or his aggravated sexual battery of S.H. caused such injury. We hold, therefore, that this mitigating factor should have been accorded some weight with respect to the sexual battery convictions.

In summary, the trial court erroneously enhanced each of the defendant's sentences based upon the application of factor (6) and declined to apply any mitigating factors to reduce the defendant's sentences. As a result, the defendant was sentenced to the maximum sentence in the applicable range for the Class E conviction and the mid-point in the applicable range for the Class B conviction based upon the application of two enhancement factors and no mitigating factors. The defendant was sentenced to one year more than the minimum sentence in the applicable range for the Class C conviction based upon the application of one enhancement factor and no mitigating factors. Because the trial court improperly applied enhancement factor (6) and failed to apply mitigating factor (1) in determining the defendant's sentences, we would reduce each sentence to the minimum sentence in the applicable range. Therefore, the defendant's sentences as a range I offender should have been: one (1) year for the Class E, sexual battery conviction; three (3) years for the Class C, sexual battery by an authority figure sentence; and eight (8) years for the Class B, aggravated sexual battery conviction.

The defendant also challenges the manner of service of the sentence. The trial court ordered that the defendant serve the sentences for sexual battery and sexual battery by an authority figure concurrently, but ordered the aggravated sexual battery sentence to be served

consecutive to the sentences for sexual battery and sexual battery by an authority figure. We agree with the defendant that the trial court erred in ordering consecutive sentences.

The ordering of consecutive sentences is purely discretionary. A trial court may order sentences to run consecutively if the court finds by a preponderance of the evidence that:

(1) The defendant is a professional criminal who has knowingly devoted such defendant's life to criminal acts as a major source of livelihood;

(2) The defendant is an offender whose record of criminal activity is extensive;

(3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;

(4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;

(5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

(6) The defendant is sentenced for an offense committed while on probation; or

(7) The defendant is sentenced for criminal contempt.

Tenn. Code Ann. § 40-35-115 (b)(1)-(7).

The Tennessee Supreme Court has cautioned that "consecutive sentences should not routinely be imposed in sexual abuse cases, or in other cases, and that the aggregate maximum of consecutive terms must be reasonably related to the severity of the offenses involved." State v. Taylor, 739 S.W.2d 227, 230 (Tenn. 1987). In the instant case, the trial court imposed consecutive sentencing based on Tennessee Code Annotated section 40-35-115 (b)(5), finding that the defendant has been convicted of two or more offenses involving sexual abuse of a minor. The statute sets out four aggravating circumstances for the trial court to consider in determining whether to impose consecutive sentences: (1) the relationship between the defendant and victim or victims; (2) the time span of defendant's undetected sexual activity; (3) the nature and scope of the sexual acts; and (4) the extent of the residual, physical and mental damage to the victim or victims. Tenn. Code Ann. § 40-35-115 (b) (5). These factors as set forth in Tennessee Code Annotated section 40-35-115(b)(5) are a codification of the same factors listed in State v. Taylor, 739 S.W.2d 227 (Tenn. 1987). We examine each factor in order.

The record shows that the defendant was the stepfather of F.H. and the biological father of S.H. The defendant lived with and helped rear both victims until the victims' mother had the defendant removed from the home. The defendant abused this position of trust. Thus, this factor may be considered for consecutive sentencing purposes.

-17-

There is some lack of certainty in the record as to when the abuse actually started and ended. The evidence clearly indicates that Count Three involving the defendant's younger daughter, S.H., occurred only one time. Additionally, the evidence indicates that Count One involved a single incident involving the defendant's older daughter, F.H. Testimony by F.H., however, suggests that there was ongoing sexual abuse or inappropriate touching, which spanned from the time of the incident alleged in Count One and continued until shortly before the defendant left the home. Therefore, the trial court correctly found that the evidence supported this aggravating factor.

The nature and scope of the sexual contact was limited. The record reveals that the defendant's inappropriate conduct never escalated. The victims in the present case both testified that the contact was limited to touching or fondling. Neither victim alleged penetration or oral contact. Therefore, this aggravating circumstance is not applicable.

As to the residual, physical and mental damage to the victims, there is evidence of some mental damage to both victims. As we previously discussed, however, there is no expert evidence to establish that the emotional damage was particularly great. There was no evidence of any physical damage to either victim. Consequently, this factor does not weigh heavily for consecutive sentencing.

We conclude that the defendant has been convicted of two or more statutory offenses involving sexual abuse of a minor and that two of the statutory aggravating circumstances are present. That does not, however, end our inquiry. We must also determine whether the effective sentence is reasonably related to the severity of the offenses. Taylor, 739 S.W.2d at 230. In Taylor, the Tennessee Supreme Court held "that consecutive sentences should not routinely be imposed in sexual abuse cases . . . and that the aggregate maximum of consecutive terms must be reasonably related to the severity of the offenses involved." Id.

Although the trial court's sentence in Taylor was upheld, the defendant in Taylor was sentenced to twenty-four (24) years out of a possible forty (40) years on each count, to be served consecutively, and the defendant in that case was eligible for parole after service of thirty percent of his sentence. The defendant in this case received a sentence of ten (10) years out of a possible twelve years for the aggravated sexual battery offense and was ordered to serve his sentence consecutive to the sentences for sexual battery and sexual battery by an authority figure. This defendant is not eligible for parole for the aggravated sexual battery conviction because Tennessee Code Annotated section 40-35-501(i) (1)-(2) requires him to serve the entire sentence imposed by the court. Thus, the defendant's effective sentence is fourteen (14) years, ten (10) of which must be served day for day.

We conclude that where consecutive sentencing is permissible under the provisions of Tennessee Code Annotated section 40-35-115(b)(5), such service is nevertheless inappropriate when the imposed sentences do not "reasonably relate[] to the severity of the offenses involved." Taylor, 739 S.W.2d at 230. The sentence in the instance case is unreasonable in light of the severity of the offenses. Although reprehensible, the defendant's behavior is slight when compared with the other behaviors that are encompassed within the same criminal statutes. The

trial court found and the record supports that absent the instant convictions, the defendant was a law-abiding citizen in every respect. Furthermore, reports from two separate mental health experts, who performed psychosexual evaluations on the defendant, indicated that he is not a danger to society and that his chance of recidivism is very slight. For the above reasons, we reverse the trial court's order directing the defendant to serve his sentence for aggravated sexual battery consecutive to the sentences for sexual battery and sexual battery by an authority figure.

## Conclusion

We begin by noting that the judgment of conviction for Count Two, sexual battery by an authority figure, must be reversed for three reasons. The first reason is based upon the error in the indictment and jury charge stating that the defendant had authority over the victim by virtue of his legal, occupational, or professional status. We conclude as a matter of law that such language does not encompass stepparents. This error mandates reversal and dismissal of the Count Two. Second, the prejudice caused by the admission of improper evidence of uncharged sex crimes as proof of the defendant's guilt is sufficient to justify reversal and remand for a new trial. Third, the state's election for Count Two was constitutionally insufficient to guarantee a unanimous jury verdict, which also requires reversal and remand for a new trial. Therefore, Count Two is reversed and dismissed.

Considering the entire record, the cumulative effect of the errors committed requires a new trial on Counts One and Three. The combined prejudice to the defendant of admitting the evidence of uncharged sex crimes as proof of the defendant's guilt and the state's use of that evidence in the closing argument is significant enough to undermine confidence in the result of the trial on all counts. This prejudice more probably than not, affected the judgment of the trier of fact; and, furthermore, these errors resulted in prejudice to the judicial process. Tenn. R. App. P. 36(b). Therefore, the judgments of the conviction for Counts One and Three are reversed and a new trial is granted on those charges.

_____
JOHN EVERETT WILLIAMS, JUDGE

-19-