IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
October 27, 2015 Session


STATE OF TENNESSEE v. VICTORIA MONQUETTE ORR

Appeal from the Circuit Court for Williamson County
No. ICR087503      Michael Binkley, Judge

_____

No. M2015-00690-CCA-R3-CD – Filed April 8, 2016
_____


The defendant, Victoria Monquette Orr, appeals her conviction for theft of property over $1,000 but less than $10,000, a Class D felony. On appeal, the defendant argues that the evidence was insufficient to sustain her conviction and that the trial court erred in admitting the prior consistent statement of a witness. Following our review of the briefs of the parties, the record, and the applicable law, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which ROBERT W. WEDEMEYER, J., joined. D. KELLY THOMAS, JR., J., filed a dissenting opinion.

Matthew J. Crigger, Brentwood, Tennessee, for the Appellant, Victoria Monquette Orr.

Herbert H. Slatery III, Attorney General and Reporter; Ahmed A. Safeeullah, Assistant Attorney General; Kim R. Helper, District Attorney General; and Terry Wood, Assistant District Attorney General, for the Appellee, State of Tennessee.


OPINION

FACTS AND PROCEDURAL HISTORY

        This case arose out of an incident in which the defendant and her co-defendant, Duran Taylor, stole $1,800 worth of shirts from a Belk's department store. Rafik Qadir testified that he worked in loss prevention for the Belk's store in the Cool Springs Mall.

On May 14, 2013, Mr. Qadir was in the camera room when he saw a male and a female enter the store. He described the male as an African-American who was about six feet tall and weighing "maybe 250 or 260" pounds. He later identified the male suspect as Mr. Taylor. Mr. Qadir said that the female was African-American and stood about 5'3" or 5'4" tall, weighed "maybe 120 pounds," and "had black hair with blonde streaks in it." He noticed that the suspects were "staging" merchandise, which was a term for taking merchandise to a "collecting area" where it could all be gathered at one time. At that point, Mr. Qadir left the camera room and went down to the sales floor. He observed the suspects go behind the register and take several Belk's bags, in which they concealed the merchandise. Mr. Qadir saw the suspects "duck[] down really low" and exit the store so as not to be seen.

Mr. Qadir pursued the suspects out of the store. He observed the female suspect get in the front passenger door of a four-door, possibly "charcoal" Kia Forte, while the male suspect got into the back seat of the car. A potato chip bag held in place by a bungee cord obscured the license plate, but Mr. Qadir was able to remove the bag as the car drove away. He saw that the car had an Alabama license plate but was unable to record the license plate number. He estimated that the suspects were "in and out" of the store within five minutes.

Mr. Qadir testified that the suspects did not purchase the items or have permission to leave the store with the items. Based on a review of the videotape and his knowledge of how inventory was displayed, Mr. Qadir believed that the suspects made off with nineteen to twenty shirts with a total value of $1,800. He viewed a surveillance video from the date, and he said that it accurately depicted what he observed in the store.

Mr. Qadir testified that he could not personally identify the defendant as the female in the video. Mr. Qadir estimated that he had viewed the surveillance video forty or fifty times, and he agreed that the female's face was not clearly visible in the video and that he never clearly saw her face. He could not see the shape of her nose or any distinctive marks on her body. He agreed that there were numerous people who could have fit the description that he provided.

Mr. Taylor testified that he grew up with the defendant in Alabama. On May 14, 2013, Mr. Taylor was with the defendant, and she asked if he wanted "to go stealing." The defendant picked up Mr. Taylor in her "Ford Kia," and Lauren Caudle was also in the vehicle. Ms. Caudle was driving, the defendant sat in the front passenger's seat, and Mr. Taylor sat in the back seat. The defendant and Ms. Caudle suggested that they go to Cool Springs, and the three then drove to the Cool Springs Mall. When they arrived at the mall, Ms. Caudle said that she was not going into the store. The defendant and Mr. Taylor left the car and went into the store while Ms. Caudle placed a potato chip bag over

the license plate. The defendant went behind the counter and obtained two Belk's bags. The two grabbed as many shirts as they could and left the store. They ran to the car, and a loss prevention officer almost apprehended the defendant. Both she and Mr. Taylor were able to escape, and they proceeded to drive back to Alabama with Ms. Caudle. Mr. Taylor testified that he and the defendant each took ten to twelve Polo shirts, which they later sold. Mr. Taylor was shown a surveillance video of the crime, and he identified himself and the defendant as the persons in the video.

Mr. Taylor testified that he spoke with Officer Corey Kroeger on July 9, 2013, about two months after the theft. He agreed that he gave Officer Kroeger a written statement, and the trial court allowed the admission of the statement as a prior consistent statement.

Mr. Taylor agreed that he pled guilty to the theft of the Belk's store and received probation. He stated that he was currently incarcerated for moving without informing his probation officer. He agreed that he had five prior convictions for theft, one of which was a felony conviction.

Officer Corey Kroeger testified that he worked for the Franklin Police Department. He investigated the theft at Belk's, and he identified Mr. Taylor as one of the participants in the theft. He created a photograph lineup to show to Mr. Qadir, and Mr. Qadir also identified Mr. Taylor. Officer Kroeger later spoke with Mr. Taylor, and Mr. Taylor admitted that he participated in the theft. Officer Kroeger testified that Mr. Taylor's testimony was not any different from the statement that he gave on July 9.

The jury convicted the defendant as charged. The trial court denied her motion for new trial, and she filed a timely appeal.

## ANALYSIS

The defendant contends that the evidence was insufficient to support her conviction. She also contends that the trial court erred in allowing the State to admit Mr. Taylor's statement to Officer Kroeger.

### I. Sufficiency of the Evidence

The defendant argues that the evidence is insufficient to sustain her conviction. Specifically, she argues that the testimony of her co-defendant was the only evidence linking her to the theft, and she contends that his testimony was not sufficiently corroborated by independent evidence.

3

When a defendant challenges the sufficiency of the evidence, the relevant question for this court is "whether, after viewing the evidence in the light most favorable to the State, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). On appeal, "'the State is entitled to the strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom.'" *State v. Elkins*, 102 S.W.3d 578, 581 (Tenn. 2003) (quoting *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Therefore, this court will not re-weigh or reevaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Instead, it is the trier of fact, not this court, who resolves any questions concerning "the credibility of witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). A guilty verdict removes the presumption of innocence and replaces it with a presumption of guilt. *State v. Evans*, 838 S.W.2d 185, 191 (Tenn. 1992). The burden is then shifted to the defendant on appeal to demonstrate why the evidence is insufficient to support the conviction. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). This court applies the same standard of review regardless of whether the conviction was predicated on direct or circumstantial evidence. *State v. Dorantes*, 331 S.W.3d 370, 381 (Tenn. 2011).

"[A] conviction may not be based solely on the uncorroborated testimony of an accomplice." *State v. Shaw*, 37 S.W.3d 900, 903 (Tenn. 2001). In order to establish sufficient corroboration of an accomplice's testimony:

> [T]here must be some fact testified to, entirely independent of the accomplice's testimony, which, taken by itself, leads to the inference, not only that a crime has been committed, but also that the defendant is implicated in it; and this independent corroborative testimony must also include some fact establishing the defendant's identity. This corroborative evidence may be direct or entirely circumstantial, and it need not be adequate, in and of itself, to support a conviction; it is sufficient to meet the requirements of the rule if it fairly and legitimately tends to connect the defendant with the commission of the crime charged. It is not necessary that the corroboration extend to every part of the accomplice's evidence.

*State v. Boxley*, 76 S.W.3d 381, 386 (Tenn. Crim. App. 2001) (quoting *Shaw*, 37 S.W.3d at 903 (quoting *State v. Bigbee*, 885 S.W.2d 797, 803 (Tenn. 1994)).

The corroborating evidence need only be "slight." *State v. Griffs*, 964 S.W.2d 577, 589 (Tenn. Crim. App. 1997). While "[e]vidence which merely casts a suspicion on the accused . . . is inadequate to corroborate an accomplice's testimony," *Boxley*, 76 S.W.3d at 387 (quoting *Griffs*, 964 S.W.2d at 589), the "evidence is sufficient if it

4

connects the accused with the crime in question." *Griffs*, 964 S.W.2d at 589. Whether there is sufficient corroborating evidence is a question for the jury. *Shaw*, 37 S.W.3d at 903.

Citing to *Boxley*, the defendant argues that there is no corroboration of Mr. Taylor's testimony because Mr. Qadir could not identify the defendant as the person in the video and because the video does not clearly show the face of the female in the video. Unlike *Boxley*, however, in which this court concluded that there was absolutely no independent evidence linking the defendant to the crime scene and corroborating the testimony of his accomplices, there was sufficient corroboration in this case in the form of the video of the theft and Mr. Qadir's testimony. Mr. Qadir provided a description of the female in the video, and Mr. Taylor identified himself and the defendant in the video. The jury was able to observe the appearance of the female in the video and compare it with Mr. Qadir's description and the in-court appearance of the defendant. Further, Mr. Qadir's description of the scene in the parking lot provided circumstantial corroboration of Mr. Taylor's testimony. Mr. Taylor said that he had grown up with the defendant in Alabama, that she picked him up on the date of the theft in her car, a Kia, that an accomplice obscured the license plate with a potato chip bag, and that they returned to Alabama after the theft. He also stated that Ms. Caudle drove the vehicle, the defendant sat in the front passenger's seat, and he sat in the backseat. When Mr. Qadir left the store, he saw the female from the video get into the front passenger's seat and Mr. Taylor get into the backseat of a Kia with a license plate from Alabama with a potato chip bag over the license plate. We conclude that the evidence is sufficient to corroborate the testimony of Mr. Taylor, and the defendant is not entitled to any relief.

## II. Prior Consistent Statement

The defendant argues that it was error for the trial court to admit Mr. Taylor's written statement as evidence. He contends that the statement improperly bolstered the credibility of Mr. Taylor because it was admitted before any attempt to attack the credibility of Mr. Taylor as a witness. The State contends that the evidence was admissible and that any error in admitting the statement was harmless.

At the conclusion of Mr. Taylor's direct examination, the State moved to introduce his written statement to Officer Kroeger into evidence. The defendant objected on the grounds that the statement was hearsay and constituted an improper bolstering of Mr. Taylor's credibility. The trial court found that the statement was hearsay but admitted it under the prior consistent statement exception to the rule against hearsay.

Tennessee Rule of Evidence 801(c) provides that "'Hearsay' is a statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to

5

prove the truth of the matter asserted." Unless it falls under one of the enumerated exceptions to the rule against hearsay, hearsay is inadmissible. Tenn. R. Evid. 802. "Prior statements of witnesses, whether consistent or inconsistent with their trial testimony, constitute hearsay evidence if offered for the truth of the matter asserted therein." *State v. Braggs*, 604 S.W.2d 883, 885 (Tenn. Crim. App. 1980).

Ordinarily, prior consistent statements are inadmissible to bolster a witness's credibility in the absence of an impeaching attack on that testimony. *State v. Meeks*, 867 S.W.2d 361, 374 (Tenn. Crim. App. 1993) (citing *Braggs*, 604 S.W.2d at 885). In order to be admissible, the witness's "testimony must have been assailed or attacked to the extent that" the testimony is in need of rehabilitation. *State v. Hodge*, 989 S.W.2d 717, 725 (Tenn. Crim. App. 1998) (citing *State v. Benton*, 759 S.W.2d 427, 434 (Tenn. Crim. App. 1988)). Prior consistent statements may not be admitted as substantive evidence and are admissible only to rehabilitate the witness's credibility. *State v. Herron*, 461 S.W.3d 890, 905 (Tenn. 2015) (citing *State v. Livingston*, 907 S.W.2d 392, 398 (Tenn. 1995)).

Here, Mr. Taylor's statement was admitted at the conclusion of his direct examination. He had not yet been cross-examined, and his credibility had not been attacked or questioned. Further, the statement was admitted as substantive evidence. The trial court erred in admitting the statement. We must next consider whether the admission of this statement was harmless error.

The defendant bears the burden of showing that an error "more probably than not affected the judgment or would result in prejudice to the judicial process." Tenn. R. App. P. 36(b); *State v. Rodriguez*, 254 S.W.3d 361, 372 (Tenn. 2008). The defendant argues that it was not harmless error because the admission "prevented defense counsel from pursuing a strategy designed to not vigorously cross examine Mr. Taylor as to his credibility, letting the fact that he was in custody speak for itself as to its credibility," and created a risk that the jury used the statement to corroborate Mr. Taylor's testimony that the defendant was his accomplice. It does not appear that a more vigorous cross-examination more probably than not affected the judgment to the defendant's detriment, as trial counsel's cross-examination was able to call Mr. Taylor's credibility into question by impeaching him with his prior convictions. The statement did not include any additional details not found in Mr. Taylor's testimony, and the surveillance video and testimony of Mr. Qadir also provided corroboration of the statement. We conclude that the error in admitting the statement was harmless, and the defendant is not entitled to any relief.

6

**CONCLUSION**

Based upon the foregoing, we affirm the judgment of the trial court.

_____
JOHN EVERETT WILLIAMS, JUDGE

7